UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PALLADIUM BOOKS, INC**.,
a Michigan corporation,                                    Case No. 10-11859

              Plaintiff,                              District Judge Hon. Julian Abele Cook

v.                                                         Magistrate Judge Hon. Paul J. Komives

**TRION WORLDS, INC.,**
a Delaware corporation, and
**TRION WORLD NETWORK, INC.,**
a Delaware corporation,

              Defendants.

_____/

### AFFIDAVIT OF KEVIN SIEMBIEDA

STATE OF MICHIGAN    )
                         ) ss.
COUNTY OF WAYNE    )

      Kevin Siembieda, being duly sworn, deposes and states as follows:

      1.      I am the President of Palladium Books, Inc., the plaintiff in this action, and the creator of the RIFTS® role-playing games.  I am fully familiar with the facts and matters asserted herein, and would testify consistently herewith if called upon to do so.

      2.      Palladium Books filed this action when it became clear that Defendants were intending to launch a "massively multiplayer online role-playing game," or MMORPG, using the term RIFT – a minor variant of Palladium's RIFTS® trademark for role-playing games, as a primary component of the game's title.  That announcement came on April 26, 2010.

      3.      MMORPGs are games designed to be played over the internet by hundreds of thousands and even millions of players simultaneously.  Software to enable one to play in the game

1

may be made available on the publisher's internet website, but is also often available to be purchased in a box at retail stores.  *See* **Exhibit 1**, photograph taken 5/28/2010 of video games and MMOs on display for sale at Target in Westland, Michigan.

4.      I am familiar with many of the most successful MMORPGs, including World of Warcraft, which currently has more than 11,000,000 subscribers, to the best of my knowledge. Other successful MMORPGs include Everquest; Lord of the Rings Online; Star Trek Online; Warhammer Online, and many others, all of which are marketed throughout the U.S. and internationally.

5.      To the best of my knowledge, every MMORPG on the market intends to market its game in every state in the union and internationally, as well.  I am unaware of any such game that restricts its registration to certain geographical areas or that is not actively seeking participants from every forum possible.

6.      It is clear that Defendants in this matter are intending to do business in Michigan, as well as every other state, from items that have been published by them and/or about the RIFT: Planes of Telara game.  For example, Trion is currently advertising for a Vice President of Sales "to lead Trion's retail and digital sales efforts in North America and Europe."   That posting also requires experience dealing with major retailers of video games such as Game Stop, Best Buy, and Walmart, which routinely distribute their products in every state, including Michigan.  The posting further states that  "[t]he ideal candidate will have a proven track record of successfully launching and selling premium MMOs at retail and digitally in North America and Europe."  *See* **Exhibit 2** to my Affidavit.

7.      Most distressingly, on or about May 27, 2010 I was informed that Trion was advertising its RIFT game at stores in Michigan.  On May 28, 2010, I went to a Target retail store

less than two miles from Palladium's headquarters in Westland, Michigan, where I came across the advertisement attached as **Exhibit 3**.  The ad was contained in Massive Online Gamer magazine and was a promotion for RIFT: Planes of Telara, as well as an announcement for a contest offering the winner a trip to Trion Studios in California.  The contest clearly was open to residents of Michigan, who would have an opportunity to submit their entry for a chance to win a prize of substantial value.  That contest is also advertised on Trion's riftgame.com website, through which Michigan residents may enter.

8.       I purchased the magazine and in doing further investigating found that it was also available in numerous "big box" stores such as Barnes & Noble, Borders, and other Target stores, all within about 5 miles of Palladium's offices in Michigan.  Receipts for my purchases of the magazine at all of those stores are attached as **Exhibit 4**.  Trion, in fact, proclaims on its website that its RIFT game "will be available both as a digital download [from the Trion website] and as a boxed product in your local video-game retail store."  *See* **Exhibit 5,** download of FAQ from Trion's website.  Moreover, Trion maintains a Facebook internet page and a Twitter account for its RIFT game that is accessible to Michigan residents.  Clearly, Trion plans to market its game both over the internet and through national distributors throughout the company, *including in local video game stores in Michigan.*

9.       Palladium has been diligent in attempting to enforce its trademark rights upon learning of Trion's intended new game.  We filed suit just 10 days after Trion first announced that it was adopting the RIFT mark.  Obviously, as the game has not been released yet, Trion has made no sales, in Michigan or anywhere else.  I suppose Palladium could have waited until the game was actually launched and then sued in Michigan based on what will undoubtedly be thousands of subscribers in the State.

Palladium should not be penalized for acting promptly to stop the infringing conduct and prevent further confusion in the marketplace.

10. There is no one connected with this case who doesn't know that it is Trion's intent to systematically conduct business in Michigan via the marketing of its RIFT MMORPG and to attract as many subscribers and purchasers of the game as it possibly can. I defy any of Trion's representatives to state that this is not Trion's intention; and the evidence shows that its promotion in Michigan has already begun – right on Palladium's doorstep.

11. In monitoring Defendants' website, Palladium's staff noted that on or about June 1, 2010, Trion modified its website at www.riftgame.com to include a small disclaimer of affiliation with Palladium Books. *See* **Exhibit 6**, snapshots from www.riftgame.com website, dated June 2, 2010.

12. Given that Defendants' game will be sold not only on their website subscription service, but also through brick and mortar retailer in boxed software on display racks with multiple games, it seems clear to me that a small disclaimer will not be noticed by the vast majority of prospective customers, and that many will purchase the game thinking that it is a version of Palladium's RIFTS® game or that Trion is somehow affiliated with Palladium and has licensed the RIFTS® property. Any such purchasers will be disappointed upon purchasing the game to learn that it is not, in fact, the Palladium RIFTS® game they were expecting.

13. Palladium Books has always valued its intellectual property and has been proactive in enforcing its rights in its trademarks and copyrights. While it is not possible to police every potential misuse of our intellectual property, our focus has been to actively contest what we consider to be substantial violations of our rights. Attached as composite **Exhibit 7** (7-1 to 7-13) are numerous examples of agreements reached in settling litigation, and cease and desist letters

sent, just within the past 10 years, to enforce our IP rights.  Many of them involved infringements

by much larger companies than Palladium, including Sony Online Entertainment, Inc., DC

Comics, Marvel Comics, and Decipher, Inc.  In each of the included examples, Palladium Books

was successful in stopping the infringing conduct and protecting its marks.

14.     For example, in 2002, Palladium filed oppositions with the Trademark Trial and

Appeals Board of the USPTO, to prevent registration of the marks COSMIC RIFT and SOLAR

RIFT by Sony, for use on "computer and video game software."   Those oppositions resulted in an

agreement whereby Sony withdrew its application for SOLAR RIFT and agreed that it would not

use the COSMIC RIFT trademark for "role-playing games or products intended to be used

primarily for role-playing games."  *See* Exhibit 7-1, par. 3.   Similarly, Palladium took issue with a

company that was infringing Palladium's RIFTS® mark through the sale of a video game entitled

DARK RIFT and had applied for a trademark registration for that mark.   After being confronted

with Palladium's rights in the RIFTS® mark, the infringer entered into a Consent Agreement by

which it agreed that it would not use the DARK RIFT mark on any role-playing games.  *See*

Exhibit 7-2, par. 2(a).

15.     In 2004, when Palladium Books learned that another company, Decipher, Inc. was

intending to release a role-playing game product entitled the "Mumon Rift Wars," Palladium

promptly filed suit in this District for trademark infringement, prior to the release of the product, as

it has done in this case.  (Case No. 04-72970.)  Shortly thereafter, the parties entered into a

Settlement Agreement in which Decipher agreed to remove the term "RIFT" from the title of its

product.  *See* Exhibit 7-3 (without exhibits thereto).

16.     Palladium's attorneys have also sent numerous cease and desist letters regarding

infringements of its trademarks.  *See* Exhibits 7-4 to 7-13.  In virtually all cases, once informed

that they were infringing Palladium's rights, the infringing parties have recognized Palladium's rights and found other ways to market their products.   This includes such major publishers as DC Comics (Superman, Batman, and other titles) and Marvel Comics (Spider Man and other titles).

17.     As we have documented for the Court, Palladium has also involved in the licensing and/or sale of video game products.  In 1995, we applied for and received a trademark covering computer games, based on the launching of our Rifts® Game Master Companion, which was a character generation program to be used in conjunction with our pen and paper Rifts® games.  *See* Exhibit 3 to Plaintiff First Amended Verified Complaint, photos of the Rifts® Game Master Disks. That application is still available via download on Palladium's website.

18.     In 2005, telecommunications giant Nokia produced and marketed a software-based video game for Palladium entitled Rifts: Promise of Power.  The game did not do particularly well, due to the lack of success of Nokia's N-Gage platform on which the Rifts: PoP game was played. However, Nokia did make substantial sales of the game and continued to do so at least through the end of 2007.  Attached as **Exhibit 8** are three royalty statements from Nokia – one each from 2005, 2006, and 2007, with the last one being for the fourth quarter of 2007.   Additionally, sales of the game were continuing to be made in 2007 via eBay, Amazon, and other websites.  In a recent conversation between Palladium's agent and Nokia's accounting rep who dealt with the Palladium account, it was confirmed that sales of the Nokia Rifts: Promise of Power game were being made in the United States in 2007.

19.     I am extremely concerned about the impact that Trion's release of its RIFT MMORPG will have on Palladium's economic prospects.  First, the RIFTS® property is under option to Walt Disney Studios and Jerry Bruckheimer Films for the production of a full-length feature RIFTS action-adventure movie.  In the last couple of months, a screenplay has been

completed and is under review by Bruckheimer, with feedback coming from the company that they

love the script and are hoping to be able to "green light" (give the go-ahead) for production in the

very near future.  In April 2010, Disney picked up another option year through April 2011, for a

substantial payment to Palladium.  *See* **Exhibit 9**, Option Renewal with monetary terms redacted.

20.     The Disney contract also provides for Disney and Palladium to share in revenues

for merchandising and other ancillary rights, along with provisions relating to Disney's potential

production of Rifts® video games.  Palladium and Disney/Bruckheimer have continued to explore

the production of video games in conjunction with the Rifts® movie, as evidenced by the June

2009 correspondence between Mark Freedman of Surge Licensing, Inc., Palladium's agent, and

Bruckheimer Films.  *See* **Exhibit 10** hereto.  And, within the past few days, JB Games, the gaming

division of Bruckheimer Films has contacted Palladium's agent and indicated a desire to go

forward with licensing of the RIFTS® video game rights.  The value of Palladium's video gaming

rights to Disney/Bruckheimer or anyone else will be dramatically diminished by the launching of a

RIFT MMORPG, which would, by virtue of its size, reach, and scope of publicity, make it

extremely difficult to launch any subsequent RIFTS video games successfully.

21.     Palladium has also actively been attempting to develop and market its own

MMORPG for several years.  In 2008, Palladium entered into a contract for the development of

such a game with Lone Star Virtual Systems, Inc.  Attached as **Exhibit 11** is a letter of June 6,

2008 referring to and transmitting an executed copy of the contract to Lone Star (the contract itself

is not attached).  Palladium received a substantial advance from Lone Star, but ultimately Lone

Star was unable to secure all of the additional financing necessary, so the contract was terminated.

22.     Palladium has been actively seeking since then for a partner to develop an

MMORPG and this year has been in discussions with several of the major MMO development

companies.  In fact, Palladium's agent was involved in discussions with just such a company as late as April 19, 2010 – just one week before Trion announced that it was changing the name of its forthcoming MMORPG to RIFT: Planes of Telara.  *See* **Exhibit 12**, e-mails from April 2010 regarding development of a RIFTS MMORPG.

23.     Finally, Trion tries to paint Palladium and me as "has beens" and that no one in the gaming world knows us or pays any attention to us.  The fact is, however, that Palladium and RIFTS are extremely well known in the industry and RIFTS® is considered one of the seminal RPGs.  We are so well known that in November 2009, Blizzard, the makers of World of Warcraft – the world's most successful MMORPG in history – flew me in as a special guest to speak to their writers about writing and game design.  During the seminar, they asked questions that referenced the tremendous influence RIFTS® and my work have had on today's videogame designers, as well as asking me why there hasn't been a Rifts MMORPG yet.

24.     While Palladium has no issue with Trion producing an MMORPG, it does take issue with Trion's decision to belatedly adopt the RIFT mark for a role-playing game that will wreak havoc on Palladium's ability to continue to exploit the mark that it has owned for 20 years. Trion had a serviceable name before ("Heroes of Telara").  It has another serviceable name ("Planes of Telara").  There are countless other marketable names it could adopt.

25.     Trion is a relatively new company that has promoted the fact that it has raised over $100 million in investment capital.  *See* **Exhibit 13,** excerpt from internet article dated 4/26/2010. Yet, Trion could not be bothered to invest a small fraction of that capital to come up with an original, non-infringing name.  There is simply no reason to permit Trion at the last minute to swoop in, trade on, and destroy the goodwill and economic opportunities that I have worked virtually my entire adult life to build for Palladium.

FURTHER AFFIANT SAYETH NOT.

Kevin Siembieda

Sworn to and executed this ⁴⧵ day of June, 2010.

Notary Public

State of Michigan. County of Wayne.
Acting in the County of Wayne.

My commission expires on

GARY GASPAS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires July 8, 2013
Acting in the County of Wayne

CERTIFICATE OF SERVICE

      I certify that on June 4, 2010, I filed the foregoing document with the Clerk of the Court, using the ECF system, which will provide electronic notice of the filing to the filing counsel of record:

Andrew M. Grove
jgrove@honigman.com

Nicholas B Gorga
ngorga@honigman.com


Date:  June 4, 2010         By:     /s/ Gina M. Williams
                               Gina M. Williams