UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PALLADIUM BOOKS, INC**.,
a Michigan corporation,

Case No. 10-11859

Plaintiff,

District Judge Hon. Julian Abele Cook

v.

Magistrate Judge Hon. Paul J. Komives

**TRION WORLDS, INC.,**
a Delaware corporation, and
**TRION WORLD NETWORK, INC.,**
a Delaware corporation,

Defendants.

_____/

Peter M. Falkenstein (P61375)
Lawrence R. Jordan (P27169)
Joan H. Lowenstein (P39422)
Emilija Avsharian (P72001)
Jaffe Raitt Heuer & Weiss, PC
201 S. Main St., Suite 300
Ann Arbor, Michigan 48104
(734) 222-4776
pfalkenstein@jaffelaw.com
*Attorneys for Plaintiff*

Nicholas B. Gorga (P72297)
Honigman Miller Schwartz & Cohn, LLP
2290 First National Bldg.
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7000
ngorga@honigman.com
*Attorneys for Defendants*

_____/

**PALLADIUM BOOKS, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR LACK OF
<u>PERSONAL JURISDICTION OR FOR TRANSFER</u>**

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ii

ISSUES PRESENTED v

INTRODUCTION 1

STATEMENT OF FACTS 1

ARGUMENT 5

I.   This Court Has Personal Jurisdiction Over Trion 5

   A.  Michigan's Long Arm Statute 6

   B.  Due Process 7

       1.  Purposeful availment and the "effects test" 9

           a.  Intentional acts 13

           b.  Expressly aimed at Michigan 13

           c.  Brunt of injury felt in the forum 16

       2.  Arises out of 16

       3.  Fair play and substantial justice 17

II.  Venue is Proper and the Court Should Not Transfer the Case to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) 18

III. Defendant's Motion to Dismiss Count III of the First Amended Complaint 19

CONCLUSION 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Greetings Corp.,*
   839 F.2d at 1169-70 ................................................................................................17

*Aleynu, Inc. v. Universal Property Development and Acquisition Corp.,*
   2008 WL 3252342 (E.D.Mich. 2008) .........................................................................9

*Audi AG v. D'Amato,*
   341 F. Supp. 2d 734, 749 (2004) .............................................................................18

*Bird v. Parsons,*
   289 F.3d 865 (6th Cir. 2002) ....................................................................................6

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)...............................................................................8, 9, 12, 13

*Calder v. Jones,*
   465 U.S. 783 (1984)...................................................................................9, 12, 13

*CompuServe, Inc. v. Patterson,*
   89 F.3d 1257 (6th Cir. 1996) .............................................................................7, 17

*Coupled Prods., LLC v. Component Bar Prods.,*
   2010 U.S. Dist. LEXIS 27813 (E.D. Mich., Mar. 24, 2010) ...................................19

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.,*
   946 F.2d 1384 (8th Cir.1991) ....................................................................................6

*Flagstar Bank v. Freestar Bank, N.A.,*
   No. 08-10357, 2008 U.S. Dist. Lexis 78602 (E.D. Mich. 2008) ............................15

*Ford Motor Co. v. Great Domains, Inc.,*
   141 F. Supp. 2d 763 (E.D. Mich. 2001)......................................................... passim

*Haelan Products, Inc. v. Beso Biological Research,* Inc.
   43 U.S.P.Q.2d 1672, 1997 WL 538731 (E.D. La. 1997) ......................................10

*Heroes, Inc. v. Heroes Foundation,*
   958 F. Supp. 1, 41 U.S.P.Q.2d 1513 (D.D.C. 1996)..............................................10

*Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, Ltd. P'ship,*
   34 F.3d 410 (7th Cir. 1994) ........................................................................... passim

*Inset Systems, Inc. v. Instruction Set, Inc.,*
   937 F. Supp. 161 (D. Conn. 1996)..........................................................................10

*McGill Technology Ltd. v. Gourmet Technologies, Inc.*,
300 F.Supp.2d 501 (E.D.Mich. 2004)......................................................................5

*Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*,
100 F.3d 1353 (7th Cir. 1996) .............................................................................8

*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 - 89 (6th Cir. 2002) ....................................................................7, 8

*Nicol v. Koscinski*,
188 F.2d 537, 537 (6th Cir. 1951) .....................................................................18

*Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*,
111 F.3d 1386 (8th Cir. 1997) ...........................................................................8

*Overland, Inc. v. Taylor*,
79 F. Supp. 2d 809 (E.D. Mich. 2000)...........................................................18, 19

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 255, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).................................18

*Presidential Facility, LLC v. Campbell*,
2010 U.S. Dist. LEXIS 31997 (E.D. Mich. Mar. 31, 2010) ..................................19

*Reynolds v. Int'l Amateur Athletic Fed'n*,
23 F.3d 1110 (6th Cir. 1994) ............................................................................16

*S. Mach. Co. v. Mohasco Indus., Inc.*,
401 F.2d 374 (6th Cir.1968) ............................................................................8, 9

*Soitec, S.A. v. Silicon Genesis Corp.*,
81 Fed.Appx. 734, 2003 WL 22839338 (Fed. Cir. 2003)......................................8

*St. Jude Medical, Inc. v. Lifecare Intern., Inc.*,
250 F.3d 587 (8th Cir. 2001) ............................................................................8

*Stewart v. Dow Chem. Co.*,
865 F.2d 103 (6th Cir. 1989) ...........................................................................19

*SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*,
563 F.3d 211 (6th Cir. 2009) ....................................................................8, 9, 13

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir.1991) ..........................................................................16

STATUTES

MCL § 600.715.................................................................................................6

MCL § 600.715(2) ..................................................................................................7

28 U.S.C. § 1391(c) ............................................................................................18

28 U.S.C. § 1404(a) .......................................................................................18, 19

**OTHER AUTHORITIES**

4 MCCARTHY ON TRADEMARK, § 32:45.50 ...............................................................10

4 MCCARTHY ON TRADEMARK, § 32:45.50 (4th ed. 2010) .........................................10

## <u>ISSUES PRESENTED</u>

Should the Court deny Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and find that there is personal jurisdiction based on the totality of the circumstances and the aggregate of Defendant's contacts with Michigan,

Plaintiff Palladium Books, Inc. answers "yes."

Should the Court deny Defendant's Motion to Dismiss for Improper Venue or in the Alternative, for Transfer of Venue, when pursuant to 28 U.S.C § 1391, venue is proper in any judicial district in which a corporation is subject to personal jurisdiction, and the balance of factors does not strongly favor Defendant as to overcome the deference to be given to Plaintiff's choice of forum.

Plaintiff Palladium Books, Inc. answers "yes."

**INTRODUCTION**

Defendant Trion Worlds, Inc.'s ("Trion")[1] Motion to Dismiss for Lack of Personal

Jurisdiction should be denied.  Trion has widely advertised its "highly anticipated" computer

game and is prepared to launch the game nationwide, if not worldwide.  Despite Trion's

strenuous efforts to convince the Court that it has no contacts with the state of Michigan, and that

the Court therefore does not have personal jurisdiction over it, Trion's intentional and blatant

violation of Plaintiff's trademarks coupled with Trion's clear intent to do business in all fifty

states, including Michigan; its interactive website; as well as its national advertising campaign,

constitute sufficient contacts with Michigan for the Court to exercise personal jurisdiction over it

in a trademark infringement suit.

**STATEMENT OF FACTS**

Palladium Books, Inc. ("Palladium") is a Michigan corporation, headquartered in

Westland, Michigan, where its sole office is located.  *See* First Amended Verified Complaint

("FAC") ¶¶ 3, 6. Palladium is the owner of numerous federally registered trademarks for

"RIFTS," a very well known and venerable series of over 70 fantasy and science fiction role-

playing games published over the past twenty (20) years. Id. ¶ 1.  These registrations include the

RIFTS® mark for computer games.

On April 26, 2010, Defendants announced their intention of marketing and launching a

"massively multiplayer online role-playing game," or MMORPG, using the term RIFT – a minor

variant of Palladium's RIFTS® trademark for role-playing games, as a primary component of the

game's title.  Id. ¶ 25. Trion's use of the word "RIFT" is a blatant, knowing and intentional

---

[1]   Defendants have conceded in their pleadings that they are, in fact, one and the same company
– having simply changed its name.  Thus, they are referred to as Trion or Defendant.

violation of Palladium's trademarks, which has already caused confusion in the marketplace and will have severe and devastating impact on Palladium in Michigan, if not enjoined. Id. ¶¶ 31, 32.

MMORPGs are games designed to be played over the Internet by hundreds of thousands and even millions of players simultaneously. *See* Affidavit of Kevin Siembieda ("Siembieda Aff.") ¶ 3. Software to enable one to play in the game may be made available on the publisher's Internet website, but is also customarily available to be purchased in a box at retail stores. Id., Exh. 1. Many of the most successful MMORPGs, including World of Warcraft, which currently has more than 11,000,000 subscribers, are marketed throughout the U.S. and internationally.  Id. ¶ 4.  Palladium is unaware of any MMORPG that restricts its registration to certain geographical areas or that is not actively seeking participants from every forum possible. Id. ¶ 5.   Trion's advertisement confirms that Trion's MMO, *Rift: Planes of Telara,* will be available both as a digital download and as a boxed product in your *local video-game store*.  *See* Siembieda Exh. 5 (emphasis added).

Defendants are also marketing their game on a website accessed via the URL www.riftgame.com. The website is available in three different languages, presumably to accommodate wide national and international audiences, and it allows a user to sign up for an account and "join the Rift community in our forums." See Siembieda Exh 5. The website also allows a user to sign up for a newsletter and it encourages fans to connect with the *Rift: Planes of Telara*™ community on several social networks, including through Trion's Facebook fan page and a Twitter account, which are accessible to Michigan residents.  Siembieda Aff., ¶ 8.

Further, Trion's aspirations are undoubtedly to target national as well as international markets. On its website, Trion boasts of having obtained $100,000,000 in investments to back their venture. *See* Siembieda Exh. 13.   Currently, Trion is advertising for a Vice President of

Sales "to lead Trion's retail and digital sales efforts in *North America* and Europe."  Siembieda Exh. 2.  That position also requires experience dealing with major retailers of video games such as Game Stop, Best Buy, and Walmart, which routinely distribute their products in every state, including Michigan.  Siembieda Aff. ¶ 6.  The posting further states that  "[t]he ideal candidate will have a proven track record of successfully launching and selling premium MMOs *at retail and digitally in North America and Europe*."  *See* Siembieda Exh. 2 (emphasis added).

Most distressingly, on May 28, 2010, Palladium's President, Kevin Siembieda was shopping in a Target retail store less than two miles from Palladium's headquarters in Westland, Michigan, when he came across the advertisement attached as Siembieda Exh. 3. Siembieda Aff. ¶ 7. The ad was contained in Massive Online Gamer magazine and was a promotion for RIFT: Planes of Telara, as well as an announcement for a contest offering the winner a trip to Trion Studios in California.  Id.  The magazine was also available in Barnes & Noble, Borders, and other Target stores, all within about 5 miles of Palladium's offices in Michigan. Siembieda Aff. ¶ 8.  Receipts for purchases of the magazine at all of those stores are attached as Siembieda Exh. 4. The contest clearly was open to residents of Michigan, who would have an opportunity to submit their entry for a chance to win a prize of substantial value.  Siembieda Aff. ¶ 7.  The same contest is advertised on Trion's website. Id.

In addition to already having significant contacts with Michigan through its interactive website and national advertisement campaigns that are targeting and reaching Michigan consumers, it is also clear that Trion is absolutely intending and planning to do substantial business in Michigan in the near future, as well as every other state, from items that have been published by them and/or about the *RIFT: Planes of Telara* game. Siembieda Aff. ¶ 6. Trion's RIFT: Planes of Telara game is scheduled for release in 2011.  Therefore, Trion has made no

sales yet, in Michigan or anywhere else.  Id. ¶ 9.   However, there is no one connected with this case who does not understand that it is Trion's intent to systematically conduct business in Michigan via the marketing and sale of, and subscriptions to, its RIFT game.  Id. ¶ 10.

It is important to note that Trion had been pre-marketing its game under the name "Heroes of Telara" and only publicly changed the name to "Rift: Planes of Telara" a little more than a month ago.  *See* Defendant's Opposition Brief, Docket # 19, p. 3.  Palladium has been diligent in immediately seeking to enforce its trademark rights upon learning of Trion's intended new game, filing suit just 10 days after Trion first announced its adoption of the "RIFT" name. Siembieda Aff. ¶ 9.  Palladium could have waited until the game was actually launched and then sued in Michigan, based on what will undoubtedly be thousands of subscribers in the State.  Id. Palladium should not, however, be penalized for acting promptly to stop the infringing conduct. Id.

Trion has already established sufficient contacts with Michigan for the Court to exercise personal jurisdiction by, among other things, infringing Palladium's trademarks; operating an interactive website that is accessible to Michigan residents; and placing ads in national advertisements that are available in Michigan, within a few miles of Palladium's headquarters. Trion should not be allowed to escape this Court's jurisdiction by self-servingly  claiming that it had not done any business in Michigan and disingenuously focusing solely on the interactivity level of its website, when it is clear that Trion has already committed acts with harmful effects in Michigan and it has every intention of doing significant business in Michigan once its game is released.

**ARGUMENT**

**I.      This Court Has Personal Jurisdiction Over Trion**

The Court has personal jurisdiction over Trion under Michigan's long-arm statute and under the applicable federal constitutional due process test.  Because the parties have not conducted discovery and because the Court will decide the motion on the basis of affidavits and other written materials, Palladium need only make a prima facie showing that Defendants are subject to personal jurisdiction in Michigan.[2] *McGill Technology Ltd. v. Gourmet Technologies, Inc.*, 300 F.Supp.2d 501, 505 (E.D.Mich. 2004).  The Court's task in evaluating whether Palladium has made a prima facie showing of personal jurisdiction over Defendants requires construing the pleadings and affidavits in the light most favorable to Plaintiff. *Id*.

Trion argues that "the only contact with Michigan that Plaintiff could plausibly allege is Trion's operation of a passive website that does not offer or sell any goods or services" and that Trion has not "directed its activity toward the State of Michigan."  However, this is simply not true. As stated above, Trion is *currently* causing harmful consequences in Michigan by infringing Palladium's trademarks. Moreover, Trion is a company with substantial assets and it has expressly stated its intent to do business nationally and internationally; it is operating an interactive website and a Facebook fan page that are accessible to and presumably have been accessed by Michigan residents; it is conducting a marketing campaign that includes Michigan; it is advertising a contest in Michigan offering Michigan residents prizes of substantial value; and it has stated that its product will be available "in your local stores."

---

[2]    In the event that the Court finds that Palladium has not made the prima facie showing, Palladium requests that the Court grant its motion for limited expedited discovery relative to personal jurisdiction, filed in conjunction with this Response.

Though Trion has not made any sales in Michigan *yet*, it is clear that it has every intention of doing so once its game is released.  Trion is now trying to benefit from the fact that Palladium did not sit on its rights and wait for Trion to actually start selling its product in Michigan.  Palladium should not be penalized for promptly seeking to enforce its rights in its chosen forum when it is clear that Trion has committed the tort of trademark infringement, it has purposefully availed itself of doing business in Michigan, and has committed acts that have harmful consequences in Michigan.

### A.    Michigan's Long Arm Statute

The Court has limited person jurisdiction over Trion pursuant to Michigan's limited long-arm statute MCL § 600.715. Specifically, § 600.715 provides that a court may exercise personal jurisdiction over a corporation arising out of, among other things, 1) the transaction of any business within the state, or 2) the doing or causing any act to be done, or consequence to occur, in the state resulting in an action for tort.

The Sixth Circuit has expressly held that violations of federal trademark law are analogous to tort cases, recognizing that "because a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendant's actions, *the injury occurs both in places where the plaintiff does business and in the state where its primary office is located.*" *Bird v. Parsons*, 289 F.3d 865, 874-76 (6th Cir. 2002)(emphasis added) *quoting Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, Ltd. P'ship,* 34 F.3d 410, 411-12 (7th Cir. 1994) (holding that personal jurisdiction was appropriate in Indiana because trademark infringement resembles a tort claim, and a substantial amount of the injury to the plaintiff was likely to occur in Indiana).[3]

---

[3]    *See also Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388 (8th Cir.1991) (explaining that "[i]nfringement of a trademark is a tort").

Furthermore, in *Neogen Corp. v. Neo Gen Screening, Inc.*,  282 F.3d 883, 888 - 89 (6th Cir. 2002), the Court specifically found that the plaintiff presented a prima facie case that limited jurisdiction existed over defendant under MCL § 600.715(2), based upon Plaintiff's allegation that the use of Defendant's website and tradename has caused an adverse economic effect upon Plaintiff in Michigan, stating that "'[t]he language of the Michigan long-arm statute likely is broad enough to encompass the Defendant's activity.'"[4]

Trion argues that "the only remotely plausible basis for the assertion of personal jurisdiction over Trion" is § 600.715(2), but that Trion is not subject to personal jurisdiction under "this 'effects doctrine'" because "even if Trion's conduct amounted to trademark infringement, Trion did not aim its conduct at the State of Michigan."  Trion's narrow reading of § 600.715(2) and its apparent reliance on the "effects doctrine" in the context of the long-arm statute analysis is misplaced. The "effects test" is generally applied under the constitutional "due process" prong analysis of personal jurisdiction, not in determining whether the state's long arm statute permits a court to assume jurisdiction over a defendant.  Trion's analysis of the "effects doctrine" is incorrect.  According to MCL § 600.715(2), the Court has personal jurisdiction over Trion because it has committed the tort of trademark infringement and the harm from that infringement occurs here in Michigan.

### B.    Due Process

For this Court to exercise personal jurisdiction in Michigan over Trion requires a *prima facie* showing that the Court's exercise of jurisdiction would not offend due process. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  Courts have developed a

---

[4]    *See also Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 771 (E.D. Mich. 2001)(stating that "misappropriating a trademark … causes an injury to occur where the trademark owner resides" and thus "the Michigan Long arm statue does not preclude the exercise of jurisdiction in this case.")

"general" three part test for determining whether a court may assert limited personal jurisdiction

over an out-of-state defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in
> the forum state or causing a consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there. Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of jurisdiction over
> the defendant reasonable.

*Neogen*, 282 F.3d at 890 *citing S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th

Cir.1968).   In evaluating whether the defendant established sufficient minimum contacts with

the forum state to support the exercise of personal jurisdiction, the Court looks at "the facts and

circumstances **in the aggregate**." *SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*,

563 F.3d 211, 218 -19 (6th Cir. 2009) (emphasis added); *See also  Northwest Airlines, Inc. v.

Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997) (stating that "personal

jurisdiction depends upon a 'defendant's contacts with the forum in the aggregate, not

individually' and the 'totality of the circumstances.'").[5]

The United States Supreme Court has emphasized the need for a "highly realistic"

approach in determining whether the defendant purposefully established minimum contacts

within the forum, recognizing for example in the context of contracts, that *contemplated future

consequences*, among other things, must be evaluated in determining whether exercise of

personal jurisdiction is proper. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)

---

[5]   *See also Soitec, S.A. v. Silicon Genesis Corp.*,  81 Fed.Appx. 734, 736, 2003 WL 22839338,
1 (Fed. Cir. 2003) (stating that "in the aggregate, [defendant]'s contacts with the forum were
sufficient to meet …the due process requirements for personal jurisdiction); *St. Jude
Medical, Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 593 (8th Cir. 2001) (holding that the
defendants contacts "taken in the aggregate," are sufficient to subject both defendants to
jurisdiction in Minnesota); *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*,  100
F.3d 1353, 1361 (7th Cir. 1996) (noting that defendant "fail[ed] to appreciate that the
minimum contacts inquiry is one that examines the totality of the circumstances").

(emphasis added).  *See also SunCoke Energy Inc.*, 563 F.3d 211, 218-19 (discussing "the contemplated future consequences" of failure to protect or return certain confidential information which would result in irreparable injury to plaintiff); *Aleynu, Inc. v. Universal Property Development and Acquisition Corp.*,  2008 WL 3252342,*6 (E.D.Mich. 2008) (discussing "contemplated future consequences" and stating that the "purpose of the loan was to further [defendant's] plan to expand business to Michigan.").

### 1.    Purposeful availment and the "effects test"

The "standard" test for determining whether a defendant purposefully availed itself of the privilege of acting in the forum state examines whether the defendant has committed acts that create a substantial connection with the forum state such that he could reasonably anticipate being hailed into the court there. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381-82 (6th Cir. 1968).  It is not necessary that a defendant be physically present in the forum; rather, it is sufficient if the defendant's actions are "purposefully directed" toward the forum. *Burger King*, 471 U.S. at 476.

In the context of trademark infringement and/or Internet usage, however, courts often apply the "effects test" to satisfy the "purposeful availment" prong of the due process analysis. Under the "effects test" formulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), a plaintiff must demonstrate that (1) the brunt of the injury was felt in the forum state; (2) that the defendant's conduct was intentional; and (3) that the defendant's acts were expressly aimed at the forum state.  *Ford Motor Co. v. Great Domains, Inc.*, 141 F.Supp.2d 763, 774 (E.D. Mich. 2001).

Frequent use of the "effects test" in the context of trademark infringement and/or Internet usage context has presumably been done in an effort to address the fast changing technological landscape and more global economy where the Internet functions "as a widely-encompassing

commercial network, informational resource, and social forum." *Ford Motor Co.* 141 F. Supp.

2d at 774. However, the "effects test" has been applied inconsistently and imprecisely, with

results depending on various facts and circumstances, with often contradicting outcomes.

Though courts struggle with formulating exactly what is required to establish personal

jurisdiction over an out-of-state defendant who infringes a trademark owned by a resident of the

forum state, the "majority rule" appears to be that "when the only contact the defendant has with

the forum state is through the accessibility of its *passive* Internet website, using the challenged

mark, and advertising its goods or services, the majority position is that *without more*, no

personal jurisdiction is created in the trademark owner's home state." 4 MCCARTHY ON

TRADEMARK, § 32:45.50 (4th ed. 2010) (emphasis added). Thus, for example, that "plus factor"

or "something more," beyond the mere accessibility of a web site, could be "defendant's

advertising of charitable activities on its Web site, coupled with the plus factor of advertisements

in the *Washington Post*, supported personal jurisdiction in D.C." Id. *citing Heroes, Inc. v. Heroes

Foundation*, 958 F. Supp. 1, 41 U.S.P.Q.2d 1513 (D. D.C. 1996); *see also Haelan Products, Inc.

v. Beso Biological Research*, Inc., 43 U.S.P.Q.2d 1672, 1997 WL 538731 (E.D. La. 1997)

(Louisiana court has personal jurisdiction over defendant accused of trademark infringement

because, while an Internet site alone is insufficient, defendant in addition placed ads in nationally

distributed trade publications and maintained a national toll free number).

At the other end of the spectrum, however, are those decisions where "by advertising on a

Web site, a company by definition, is directing its advertising at all 50 states and is therefore

'purposefully availing' itself of the privilege of seeking business in all 50 states." 4 MCCARTHY

ON TRADEMARK, § 32:45.50, *citing Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161

(D. Conn. 1996). In *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd.*

*Partnership*, 34 F.3d 410, 411 (7th Cir. 1994), a Seventh Circuit case, the Court found personal jurisdiction essentially based solely on the injury the trademark holder suffered in its home state. Judge Posner, writing for the Court, found personal jurisdiction in the forum of the trademark holder based merely on the "injury of valuable property located in Indiana: the state in which the injury occurs is the state in which the tort occurs, and someone who commits a tort in Indiana should, one might suppose, be amenable to suit there." The Court further held that though "the defendants have not yet licensed the sale of merchandise with the [infringing name] on it in Indiana, … it [was] only a matter of time before the Baltimore team will be selling its merchandise nationwide; **the plaintiffs are entitled to seek injunctive relief before that happens.**" *Id*. at 411-12 (emphasis added).

Thus, it is clear that courts will exercise personal jurisdiction over a defendant merely based on the harm that the trademark holder suffers in its forum state, even if the defendant has no other contacts with the state.  However, even when the courts apply the stricter majority rule, it is clear that when a defendant commits trademark infringement through an essentially passive website and there is "something more,"[6] courts generally exercise personal jurisdiction over the defendant.

In *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763 (E.D. Mich. (2001), the Court discussed at length the analysis under the "effects test" in the context of infringing domain names.  The Court recognized a broad spectrum of infringing conduct "from those that are clearly aimed at a mark owner, to those that clearly are not, with a large gray area in between."

---

6   Even Trion in its brief agrees with this point (stating that "for the "effects doctrine to apply, there needs to be "something more" to demonstrate that the defendant directed his activity towards the forum state." Brief, p. 10).  Where Palladium and Trion disagree however, is whether "something more" is present in this case, demonstrating that Trion directed its activity towards Michigan.

*Id*. at 776.  The Court rejected the notion that merely by incorporating a famous mark into a domain name, the registrant necessarily assumes the risk of being subjected to jurisdiction in the trademark owner's home forum.  However, having rejected the *per se* rule of personal jurisdiction in the form of the trademark holder, in the absence of authoritative case law, the Court fashioned its own test by applying a "'highly realistic' approach that looks to the 'real object[ives]' of the acts in each individual case, and rejected 'mechanical' tests on which personal jurisdiction might turn."  *Id*. at 776 *quoting Burger King,* 471 U.S. at 478.

For example, in evaluating whether the "expressly aimed" prong of the "effects test" was satisfied, the Court looked at "(1) the likelihood of confusion as to who controls the domain that is created by the domain name itself and (2) the level of individualized targeting at the trademark owner." *Id*. at 776.  The Court further stated that "these factors are inversely proportionate to each other. Thus, if the likelihood of confusion created by the domain name is high, a low-level showing of individual targeting will be required. If the likelihood of confusion is low, the level of individual targeting required will be high." *Id*.  The Court's analysis of the effects test in *Ford Motor*, is instructive of the "highly realistic" approach the Court should take in this case in evaluating whether under the "effects test" Trion is subject to personal jurisdiction in Michigan.

Trion's argument appears to be that it has not purposefully availed itself of the privilege of acting in Michigan and that it has not caused an effect in the forum state.  Def. Brief at 6. Trion argues at length that its website, which Trion claims is its only contact with Michigan, is not interactive enough, does not collect any information about the visitor's address or geographic location, and does not give Trion any indication from which state the users may be accessing the site.  Id., p. 9.  Trion further argues that the *Calder* "effects test" does not apply because Trion has not directed its activity toward the State of Michigan and that the "something more" element

is missing because given that it is operating merely a passive website, "it has not sold any goods or services to residents of Michigan."  Id., p. 10.

Trion's description of its actions and the legal implication of those actions omits critical details that, viewed realistically and in the aggregate, show that Trion has sufficient minimum contacts with Michigan. Trion's website is actually interactive, not passive, it is certainly advertising in Michigan, and it has proudly stated a national and international business plan.  In light of all those actions, the level of interactivity of its website and the *current* lack of sales provide a convenient smokescreen.  However, when viewed "highly realistically," it is the totality of the circumstances present in this case, including *contemplated future consequences*, which will undoubtedly have severe and possibly devastating consequences in Michigan, that show that Trion purposefully established minimum contacts within Michigan. *See Burger King Corp.*, 471 U.S. at 479; *SunCoke Energy Inc.*, 563 F.3d at 218 -19; *Ford Motor Co.*, 141 F.Supp.2d at 774.

### a.  Intentional acts

To prevail under the "effects theory," the plaintiff must show that the defendant acted intentionally.  *Ford Motor Company*, 141 F. Supp.2d at 775.  Given the popularity of the Rifts® products and that Palladium's mark has been in use for 20 years, it is "highly unlikely" that Trion's infringement "could have resulted from negligence." *Ford Motor Co.*, 141 F.Supp.2d at 774.  Trion has not addressed in its brief whether its acts were intentional or not.  The Court should therefore find the first element of the *Calder* "effects test" satisfied. *Id*.

### b.  Expressly aimed at Michigan

As explained above, the Court should take a "'highly realistic' approach that looks to the 'real object[ives]' of the acts" in this case, to determine whether Trion "expressly aimed" its wrongful conduct at Michigan for purposes of deciding whether exercising personal jurisdiction

over Trion would comport with the due process requirements. *Ford Motor Co.*, 141 F. Supp.2d at 776.

Here, a "realistic view" of Trion's actions shows that Trion expressly aimed its conduct at Michigan by creating a high likelihood of confusion with the infringing name of its game, by maintaining an interactive website and a Facebook fan page that are accessible to Michigan residents, by conducting a national contest available and open to Michigan residents, by stating that its product would be available "in your local store" and through Trion's stated intent to do business nation-wide and internationally.

Furthermore, contrary to Trion's assertions, its website is not its only contact with Michigan.  Trion's infringement of Palladium's trademarks is causing "tort-like" consequences in Michigan and is creating a "high likelihood of confusion" given the popularity of Palladium's Rifts® products.  As a matter of fact, there is already substantial evidence of actual confusion, even in the short time since Trion announced the new name of its game, with numerous fans of role-playing games thinking that this was a long-awaited MMORPG based on Palladium's Rifts® series of role-playing games. *See* Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, [D/E 10],  Exh 8.  As in *Ford Motor Co.*, where the Court held that "'the expressly aimed' prong of the effects test [was] satisfied with respect to the domain names that create a high likelihood of confusion," here the Court should also find that Trion expressly aimed its conduct at Michigan because of the high likelihood of confusion with respect to the infringing name of Trion's game.

Second, despite Trion's efforts to portray its website as completely passive, Trion's website *is* interactive as it allows people to sign up for forums and exchange information.  Trion points out that it does not collect information about people who register through its website and

that it does not know what states those people are from.  Bypassing, for now, the dubious nature of this assertion, it is irrelevant whether Trion has actual knowledge of the geographic location of its website's visitors.  What matters is that the website is available to Michigan residents and it has most likely already been accessed from Michigan numerous times. In addition, though Trion's infringing website does not *currently* offer for sale any goods or services, the real objective of its website is to serve as a marketing tool and a prelude to a national and international *sales campaign* that will undoubtedly target and result in many Michigan customers.

Trion's lengthy argument about the interactivity of its website is beside the point because Palladium is *not* arguing that the Court should assume jurisdiction over Trion *solely* based on Trion's website.  Palladium *is* arguing that the totality of effects of Trion's acts, *including Trion's website*, amount to sufficient minimum contacts for the Court to exercise jurisdiction.

More importantly, Trion has clearly shown that it intends to do business nationally, including in Michigan.  It is essentially indisputable that Trion will have hundreds, if not thousands of customers and substantial sales in Michigan in the very near future.  Thus, unlike in *Flagstar Bank v. Freestar Bank, N.A.*, No. 08-10357, 2008 U.S. Dist. Lexis 78602, at *1 (E.D. Mich. 2008), decided by this Court, where the small *community bank located in Illinois* almost certainly had no aspirations of doing business in Michigan, Trion has every intention of doing business in Michigan. Trion is absolutely targeting all fifty states as is clear from items that have been published by them and/or about the RIFT: Planes of Telara game.  While it is true that Trion has not sold any products in Michigan, "it is only a matter of time" before Trion does so; Palladium is entitled to seek injunctive relief in its chosen forum before that happens. *See Indianapolis Colts*, 34 F.3d at 412.

### c.      Brunt of injury felt in the forum

Trion's infringement of Palladium's trademarks is currently harming interests of a Michigan corporation that is felt mainly, if not solely, in Michigan. Trion argues that there is no indication that Palladium's "reputation is centered in Michigan" and that most of Palladium's users do not reside in Michigan.  However, for purposes of determining where Palladium's injury is felt, it is irrelevant where its uses are located.  In truth, Trion's infringement of Palladium's marks will have the most severe effects in Michigan because that is where Palladium is and has been located for decades.  In *Ford Motor Co.*, the Court discussed the *Reynolds* decision relied on by Trion, in which the Sixth Circuit concluded that personal jurisdiction over the defendant in Ohio was not proper because among other things Reynolds was "an international athlete whose professional reputation is not centered in Ohio."  *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir. 1994).  However, the Court in *Ford Motor Co.* distinguished *Reynolds* because the Sixth Circuit listed "numerous other factors indicating that Ohio was not the focal point of the injury." Because the *Ford* Court required clear showing that the defendants' acts were aimed at plaintiff, "the court thinks that the case for personal jurisdiction is much more compelling" than in *Reynolds*.  *Ford Motor Co.*, 141 F.Supp.2d at 778. Similarly, there is a clear showing here that Trion's acts were aimed at Palladium, as discussed above.  Furthermore, as in *Indianapolis Colts*, by choosing a name that might be found to be confusingly similar to Palladium's Rifts® games, Trion assumed the risk of injuring valuable property in Michigan. *Indianapolis Colts*, 34 F.3d at 411.

### 2.      Arises out of

Because the act of using a name that incorporates a trademark gives rise to a cause of action, once it is determined that the infringing use of a trademark was "expressly aimed at the forum state, 'the arising out of' requirement is satisfied." *Ford Motor Co.*, 141 F.Supp.2d at 778,

quoting *Theunissen v. Matthews*,  935 F.2d 1454, 1461 (6th Cir.1991) (applying the "but for"

test).

### 3.    Fair play and substantial justice

Finally, where the first two elements of the test for personal jurisdiction are met, a strong

inference arises that the exercise of jurisdiction is reasonable.  *CompuServe, Inc. v. Patterson*, 89

F.3d 1257, 1268 (6th Cir. 1996).  A court must consider several factors in this context, including

"the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining

relief, and the interest of other states in securing the most efficient resolution of controversies."

*Id.* citing *American Greetings Corp.,* 839 F.2d at 1169-70 (citing *Asahi Metal Indus.,* 480 U.S. at

113, 107 S.Ct. at 1032-33).

Trion essentially argues that the burden imposed on it by having to litigate in Michigan

would be substantial given the distance between Palladium's chosen forum, Michigan, and

Trion's headquarters and other offices in California and Texas.  In addition, Trion argues that the

majority of witnesses who can testify about Trion's game are located in California.  However,

neither of these two factors amount to "a compelling case" that exercise of personal jurisdiction

would be unreasonable or unfair. Furthermore, Trion's argument that the majority of witnesses

will be located in California is simply not true, as in addition to Palladium's president, Plaintiff

will present employees of Palladium to testify as to the history of the company; the good will

established in the mark; the scope of products produced; and confusion in the marketplace.  In

addition, the relative means of the parties clearly favors retaining the case in Michigan.

Defendants boast on their website of having obtained $100,000,000 in investments to back their

venture.  To the extent that these factors are even relevant for purposes of determining whether

exercise of jurisdiction is reasonable, they clearly favor exercise of personal jurisdiction over

Trion.

**II.     Venue is Proper and the Court Should Not Transfer the Case to the Northern District of California Pursuant to 28 U.S.C. § 1404(a)**

Venue is proper in this District.  *See* 28 U.S.C. § 1391(c) ("for purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.") Defendants' request for a transfer to the Northern District of California will become relevant if the Court finds that Defendants are subject to personal jurisdiction in Michigan and that venue in the Eastern District of Michigan is therefore proper.  As tacitly conceded by Defendants through their cursory and tepid request for transfer, it is clear that if venue is proper in this District, the case should remain here.  Defendants correctly note that to determine whether a transfer would serve the interests of justice, courts, in their discretion, consider the following:

> (1) the convenience of the witnesses; (2) the location of relevant documents and relevant ease of access to sources of; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).  It is well-settled, however, that in deciding whether to transfer, primary emphasis is placed on plaintiff's choice of forum, which is accorded strong deference:

> the Supreme Court has stated that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). Additionally, the Sixth Circuit has noted that "unless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951)(citation omitted). . . . Defendant "bears the burden of demonstrating that fairness and practicality strongly favor the forum to which transfer is sought." *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 749 (2004)(internal quotations omitted).

*Coupled Prods., LLC v. Component Bar Prods*., 2010 U.S. Dist. LEXIS 27813, *11-12 (E.D. Mich., Mar. 24, 2010).  *See also Presidential Facility, LLC v. Campbell,* 2010 U.S. Dist. LEXIS 31997, *22 (E.D. Mich. Mar. 31, 2010) (noting "the deference that the Court must give to Plaintiff's choice of forum, which choice will not be disturbed 'unless the balance is strongly in favor of the defendant.'" *quoting Stewart v. Dow Chem. Co.,* 865 F.2d 103, 106 (6th Cir. 1989)).

Here, there is simply no basis to disturb Palladium's choice of forum.  Moreover, as Defendants are clearly intending to market their game on a national (and international) level, as demonstrated by their national advertising campaign, the critical evidence as to likelihood of confusion would emanate from surveys taken throughout the country, and testified to by experts not necessarily located in either Michigan or California.

Several other *Overland* factors clearly favor the Michigan forum.  If this District is a proper venue for this action, then Sixth Circuit and Michigan law, respectively, would apply. Certainly, this Court has "greater familiarity" with such governing law than would a district court in California.  Furthermore, the relative means of the parties clearly favors retaining the case in Michigan.  Defendants boast on their website of having obtained $100,000,000 in investments to back their venture.  *See* Siembieda Exh 13. The prejudice to Palladium in being forced to litigate this case in a distant forum would be far greater than that to Defendants in having to defend in Michigan.

Defendants have failed to show that the balance of factors is "strongly in Defendants' favor" so as to overcome the deference to be given to Plaintiff's choice of forum, and Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) should be denied.

### III.     Defendant's Motion to Dismiss Count III of the First Amended Complaint

Defendant has moved to dismiss Palladium's trademark dilution claim for failure to state a claim.  That motion is irrelevant to the jurisdictional issues before the Court, and is also

irrelevant to the motion for preliminary injunction, as Palladium has sought the injunction solely based on its claims for trademark infringement and false designation of origin.  Given the short response time, Palladium respectfully requests that it be given the standard time allotted under the Local Rules to respond to Trion's motion to dismiss Count III of the Amended Complaint.

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Defendant's motions to dismiss for lack of personal jurisdiction or to transfer to the Northern District of California.

Date:   June 4, 2010                    By:     /s/ Peter M. Falkenstein
                                                Peter M. Falkenstein (P61375)
                                                Lawrence R. Jordan (P27169)
                                                Joan H. Lowenstein (P39422)
                                                Emilija Avsharian (P72001)
                                                Jaffe Raitt Heuer & Weiss, PC
                                                201 S. Main St., Suite 300
                                                Ann Arbor, Michigan 48104
                                                (734) 222-4776
                                                pfalkenstein@jaffelaw.com
                                                *Attorneys for Plaintiff*

---

CERTIFICATE OF SERVICE

I certify that on June 4, 2010, I filed the foregoing document with the Clerk of the Court, using the ECF system, which will provide electronic notice of the filing to the filing counsel of record:

Andrew M. Grove
jgrove@honigman.com

Nicholas B Gorga
ngorga@honigman.com

Date:  June 4, 2010          By:     /s/ Gina M. Williams
                                     Gina M. Williams

---