UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PALLADIUM BOOKS, INC.,**
a Michigan corporation,

          Plaintiff,

v.

**TRION WORLDS, INC.,**
a Delaware corporation, and
**TRION WORLD NETWORK, INC.,**
a Delaware corporation,
          Defendants.

Case No. 10-11859
Hon. Julian Abele Cook, Jr.
Magistrate Judge Paul J. Komives

**DEFENDANT TRION WORLDS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR:**

(1) LACK OF PERSONAL JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2);

(2) IMPROPER VENUE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3), OR IN THE ALTERNATIVE, TRANSFER OF VENUE PURSUANT TO 28 U.S.C. § 1404;

(3) MOTION TO DISMISS CLAIM III FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

I.    **INTRODUCTION**

With its opposition to Defendant Trion Worlds, Inc.'s ("Trion") motion to dismiss,

Plaintiff Palladium Books, Inc. ("Palladium") is essentially asking this Court to rewrite decades

of settled law on personal jurisdiction, and find that a defendant who has never sold a single

product or done any business in Michigan, has no employees or offices in Michigan, has never

entered into a contract in Michigan, has never targeted advertisements at Michigan, and has

never intentionally aimed any conduct whatsoever at Michigan should be subject to this Court's

jurisdiction.  The law is clear that Palladium has the burden of setting forth *specific facts*

showing that this Court has jurisdiction.  Instead, Palladium has mainly set forth speculation.

Palladium's primary argument appears to be that *at some point next year*, Trion will probably

sell products nationwide, which would include Michigan, and would therefore be subject to

personal jurisdiction *at that time*.  This novel theory of prospectively applying personal

jurisdiction is clever, but unsupported by precedent or common sense.  The only evidence of

Trion's *current* Michigan contacts that Palladium has produced is (1) an advertisement in a

national magazine, and (2) a website where users are unable to transact business.  These facts are

not in dispute, and despite Palladium's hand-waving, the law is clear that neither of these actions

gives rise to personal jurisdiction in Michigan.

Palladium also argues that, in bringing this lawsuit, it was faced with the false dilemma

of choosing between (1) suing Trion in Michigan now (before Trion is subject to personal

jurisdiction), or (2) waiting until Trion's game launched to sue in Michigan.  Palladium contends

that it should not be "penalized for acting promptly."  There is, of course, an obvious third

option: sue now in a district where Trion is subject to personal jurisdiction and where a related

1

action between the exact same parties is pending – the Northern District of California.[1]  Being

required to sue a defendant in a district where they are subject to personal jurisdiction is not a

"penalty" to Palladium: it is the law.  Palladium cannot reasonably argue that Trion is trying to

avoid addressing the merits of the case by opposing personal jurisdiction in Michigan, and, as

will be demonstrated below, this Court should grant Trion's motion to dismiss.

## II.    ARGUMENT

### A.    Palladium Presented No Evidence that Trion is Subject to Jurisdiction in Michigan

Palladium's pleadings provide insight to what has happened here.  On May 7th,

Palladium filed a verified complaint in which Mr. Siembieda swore under penalty of perjury that

Trion "ha[s] transacted and continue[s] to transact business within the State of Michigan . . . on a

continuous and systematic basis."  Compl. ¶ 4.  Palladium then retreated in its May 27th

amended complaint to make the same allegation "on information and belief."  FAC ¶ 4.  Now,

apparently, Mr. Siembieda concedes that "obviously . . . Trion has made no sales, in Michigan or

anywhere else."  Siembieda Aff. ¶ 9.  Since Palladium did not even attempt to argue that Trion is

subject to general jurisdiction in its opposition to this motion, it has conceded that Trion does not

have "continuous and systematic" business ties to Michigan, contrary to Mr. Siembieda's sworn

statements.  Palladium clearly *assumed* that Trion had sufficient contacts to give rise to

jurisdiction in Michigan, filed a complaint without performing a reasonable Rule 11 inquiry, and

is now panicking and grasping at straws to find any type of connection to the state.  Palladium

and Mr. Siembieda have demonstrated a pattern of making sweeping allegations without

evidentiary support, and their testimony should be weighed accordingly.

The only real "evidence" that Palladium has produced of Trion's purported contacts with

---

[1] On June 3, 2010, Trion filed a declaratory judgment action in the Northern District of California
to address the merits of Palladium's trademark claims.  A copy of the complaint is attached as

Michigan is (1) a single advertisement in a national magazine, and (2) a passive website that does not permit users to transact business. The remainder of Palladium's "evidence" consists of several statements indicating that Trion plans to eventually market its game on a nationwide basis at some point next year. None of these contacts—individually or in the aggregate—gives rise to personal jurisdiction.

B.   Even "in the Aggregate" Trion's "Contacts" Do Not Support Jurisdiction

Palladium stresses that this Court must examine Trion's contacts "in the aggregate." The cases Palladium cites, however, for this proposition all involve an aggregation of activity far greater than Trion's "contacts" with Michigan. *See, e.g.*, *SunCoke Energy Inc. v. Man Ferrostaal Aktiengesellschaft*, 563 F.3d 211 (6th Cir. 2009) (trips to the forum and entering into a contract with the plaintiff that clearly contemplated an ongoing business relationship); *Nw. Airlines v. Astraea Aviation Servs.*, 111 F.3d 1386, 1391 (8th Cir. 1997) (entering into three contracts with plaintiff in the forum with specific forum-selection clauses). In contrast, when courts in the Sixth Circuit have analyzed whether jurisdiction is proper based on an aggregation of "contacts" extremely similar to the instant case, they have concluded that it is not.

In *William R. Hague, Inc. v. Puretech Water Sys.*, the plaintiff brought a number of trademark-related claims against a California defendant. No. 96-2761, 2010 U.S. Dist. LEXIS 48901, at *1 (S.D. Ohio Mar. 9, 2010). The defendant operated a website accessible in Ohio, but users could not directly place orders on the website, and the defendant had not yet sold any products to Ohio customers. *Id.* at *2. Furthermore, the defendant placed advertisements in national publications that were available in Ohio, and publicized the defendant's plans for "nation-wide expansion" of its operations. *Id.* at *3. Even examining these contacts "in the aggregate," the court dismissed the case for lack of personal jurisdiction, and concluded that the

Exhibit A to the Declaration of Jennifer L. Barry, which has been filed herewith.

contacts were "nothing more than brand and product promotion unrestricted by locale" and that "[n]one of the facts alleged by [p]laintiff suggest that [d]efendant's conduct in this regard was in any way purposefully directed at Ohio residents." *Id.* at \*17. Given the extreme similarity of the contacts at issue in *William R. Hague*—a website that did not allow users to transact business, no sales to the forum, a national advertisement, and plans for nation-wide expansion in the future— Trion respectfully requests that this Court reach a similar conclusion. *See also Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 812 (E.D. Mich. 2000) ("mere placement of advertisements in nationally distributed on-line and print publications" are insufficient contacts to find personal jurisdiction).

C.   Trion Has Not Intentionally Aimed Any Conduct at Michigan or Palladium

Palladium briefly addresses why it believes MCL § 600.715(2) permits the assertion of limited personal jurisdiction over Trion. However, the primary case that Palladium cites for this proposition is distinguishable. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888-89 (6th Cir. 2002) (Palladium conveniently omitted that *Neogen* discussed the defendant's use of a website and tradename *"in dealing with its Michigan customers"* in applying § 600.715(2)) (emphasis added). In any case, it is well-settled law that a long-arm statute cannot extend beyond the scope of due process, so to the extent that § 600.715 would permit the assertion of jurisdiction that would violate due process, it is inapplicable. *Id.* at 889.

Much of Palladium's brief is devoted to the theory that Trion should be subject to jurisdiction under the purposeful availment "effects test" because Palladium will allegedly suffer injury in Michigan. The majority of courts, however, have noted that the effects test should only be applied in narrow circumstances, because "a plaintiff always feels the effects of a legal injury in his home forum," and therefore the test "should be applied with caution." *See, e.g., Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 774 (E.D. Mich. 2001).

4

Most courts are reluctant to apply the effects test without clear, explicit evidence that the

defendant intentionally targeted its conduct at the forum. For example, in a recent case in this

Circuit, the plaintiff asserted trademark-related claims against a defendant that operated a

website where users could transact business, *but had not yet done any business with customers in*

*the forum. QSR Automations, Inc. v. KRS Corp. LLC*, NO. 09CV-242-S, 2010 U.S. Dist. LEXIS

32174, at *8-9 (W.D. Ky. Mar. 31, 2010). The defendant also apparently placed ads in national

publications. *Id.* at *3 n.1. The plaintiff argued that because it would "feel the effects" of the

defendant's conduct in the forum, the court should find that the defendant intended to cause an

injury there. *Id.* at *11. The court rejected this argument and held that the intent element must be

separately established, and the plaintiff must show that the defendant somehow "aimed" its

conduct at the forum state. *Id.* The court was not convinced by the plaintiff's "attempts to

cobble together the presence of a[n] interactive website on the Internet with the effects it claims

to have felt in [the forum] from [the defendant's] intentional tortious acts," and found that

asserting jurisdiction over the defendant would violate due process. *Id.*

Indeed, the two cases that Palladium relies on most heavily—*Ford Motor* and

*Indianapolis Colts*— are inapposite and represent the few limited exceptions where the effects

test has been applied. *Ford Motor* dealt with whether several cybersquatters who were clearly

attempting to profit by registering domain names containing marks of famous Michigan

companies like Ford, Lincoln, and Mercury should be subject to personal jurisdiction. 141

F. Supp. 2d at 774. In contrast to this case, the *Ford Motor* defendants did not dispute that they

had acted intentionally, and based on the fame of the marks and the explicit infringement (*e.g.*,

registering "4fordtrucks.com"), the court found personal jurisdiction. *Id.* Notably, the court

stated that it was taking a "narrow approach" and only finding jurisdiction based on "a clear

showing that the acts of cyberpiracy were aimed at Ford." *Id.* at 778.  There has been no such "clear showing" in this case, nor could there be, since Trion's motion to dismiss Palladium's dilution claim demonstrated that Palladium's marks are not "famous," and Trion has clearly stated that it did not have an intent to trade on any "goodwill" that Palladium may have.

*Indianapolis Colts v. Metro. Baltimore Football Club LP*, is similarly limited to its facts. 34 F.3d 410 (7th Cir. 1994).  It was indisputably clear that the parties in that case had a history of bad blood, and the defendant had named its CFL team the "Baltimore CFL Colts" as a direct attack against the plaintiff Indianapolis Colts NFL team, since the owner of the Indianapolis Colts had abruptly and contentiously moved the team to Indianapolis a few years earlier, prompting years of litigation with the city of Baltimore. *Id.* at 411. The court noted that "in all the . . . cases that have come to our attention in which jurisdiction over a suit involving intellectual property . . . was upheld, the defendant had done more than brought about an injury to an interest located in a particular state." *Id.* at 412.  Although the court ultimately held that the defendant was subject to personal jurisdiction (apparently at least in part based on the defendant's television broadcasts into Indiana markets) the unique and contentious history between the parties made it very clear that the defendant had intentionally "aimed" its conduct at the Indianapolis Colts and its owner. *Id.* at 412.

Indeed, numerous subsequent cases have limited this decision to its unique facts. *See, e.g., Mill. Enters., Inc. v. Mill. Music, LP*, 33 F. Supp. 2d 907, 912 (D. Or. 1999) ("[The Baltimore Colts] were directing their infringing action at Indiana, specifically at the owner of the Indianapolis Colts, knowing that their actions likely would cause harm."); *Jackson v. Cal. Newspapers P'ship*, 406 F. Supp. 2d 893, 897 (N.D. Ill. 2005) (noting that the defendant "explicitly directed [its] torts at the forum" and that "infringement on the trademark name 'Colts'

6

could only have an effect in Indiana"). In contrast, there is no similar history of bad blood between the parties here, and Palladium has produced no evidence that Trion is intentionally aiming its conduct at Palladium or Michigan beyond conclusory and unsupported assertions of Palladium's "fame." By adopting the ubiquitous sci-fi/fantasy term "rift" in the name of a MMO game, Trion's conduct was no more "aimed" at Palladium than any of the multitude of other games, books, and movies that incorporate that word or concept.

Palladium even admits in its opposition that these cases are not the "majority rule," yet asks this Court to apply their unique facts to this case. Both of these cases involved situations where it was eminently clear that the defendant had aimed its conduct at the forum. Palladium has presented no evidence that this case involves a similar situation, and its conclusory allegations that Trion intentionally aimed its conduct at Michigan are insufficient grounds to find personal jurisdiction. Indeed, in cases factually analogous to this one, such as *QSR*, courts in the Sixth Circuit have refused to apply the effects test, and this Court should do the same.

D.   Personal Jurisdiction Cannot Be Premised on Future Plans

Palladium appears to base its novel theory of prospective personal jurisdiction on out-of-context language that "contemplated future consequences" can give rise to personal jurisdiction. However, this doctrine is limited to the context of *preexisting contracts* between the parties that contemplate an ongoing relationship with the forum. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479-82 (1985) (entering into a 20 year franchise contract with plaintiff that contemplated "wide reaching contacts" with the forum and included a choice-of-law provision using the forum's law was sufficient to find personal jurisdiction). This doctrine cannot be used to argue that, because it is *foreseeable* that company may take future actions that could subject it to personal jurisdiction, it should be subject to jurisdiction before it does so. The Supreme Court has consistently rejected the assertion of personal jurisdiction on similarly speculative grounds.

7

*See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) ("'foreseeability'

alone has never been a sufficient benchmark for personal jurisdiction under the Due Process

Clause."). Most companies have plans for future expansion, but if taken to its logical

conclusion, Palladium's theory would subject any business to personal jurisdiction if it merely

stated a desire to operate in a forum in the future, and render the concept of due process in the

personal jurisdiction context almost meaningless.

## III.   CONCLUSION

Palladium has not cited a single authority holding that operation of a website that did not

allow visitors to transact business, or the placement of an ad in a national publication, can give

rise to personal jurisdiction. In fact, courts in this Circuit have explicitly found that these two

contacts, combined "in the aggregate" with a stated desire for "nation-wide expansion" do not

permit a court to assert jurisdiction. Instead, Palladium's brief is largely premised on a novel

theory that jurisdiction can be found prospectively. It cites no authority to support this theory,

other than the "contemplated future consequences" doctrine that relates to a defendant's

preexisting *contractual relationships* with the forum. Trion is not trying to avoid resolving this

dispute on the merits, as evidenced by its declaratory judgment action in the Northern District of

California. In the event that this action is dismissed, Palladium will still get its day in court, but

it will be in a court that may properly assert personal jurisdiction over all parties.

HONIGMAN MILLER SCHWARTZ AND COHN LLP

/s/ Nicholas B. Gorga
Nicholas B. Gorga (P72297)
Attorney for Trion Worlds, Inc.
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000
ngorga@honigman.com

Dated:  June 7, 2010

CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2010, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system.

s/ Nicholas B. Gorga
Nicholas B. Gorga (P72297)
HONIGMAN MILLER SCHWARTZ & COHN LLP
Attorney for Trion Worlds, Inc.
2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226
(313) 465-7000
ngorga@honigman.com

DETROIT.4221165.1