# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **PALLADIUM BOOKS, INC.,** | ) | |
| a Michigan corporation, | ) | Case No. 10-11859 |
| Plaintiff, | ) | Hon. Julian Abele Cook, Jr. |
| | ) | Magistrate Judge Paul J. Komives |
| **v.** | ) | |
| | ) | |
| **TRION WORLDS, INC.,** | ) | |
| a Delaware corporation, and | ) | |
| **TRION WORLD NETWORK, INC.,** | ) | |
| a Delaware corporation, | ) | |
| Defendants. | ) | |

## DECLARATION OF JENNIFER L. BARRY

I, Jennifer L. Barry, declare as follows:

1.      I am an attorney with the law firm of Latham & Watkins LLP, counsel for Defendant Trion Worlds, Inc. in this matter.  I have personal knowledge of the information set forth below and, if called as a witness, could and would testify competently thereto.

2.      Attached to this declaration as **Exhibit A** is a true and correct copy of the Complaint for Declaratory Judgment and Cancellation of Federal Registrations filed in the Northern District of California on June 3, 2010.  This action has been assigned Case No. 10-cv-02466-JCS and has been assigned to Magistrate Judge Joseph C. Spero.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct.  This declaration was executed on June 6, 2010 in Chula Vista, California.

_____
Jennifer L. Barry

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2010, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system.

s/ Nicholas B. Gorga
_____
Nicholas B. Gorga (P72297)
HONIGMAN MILLER SCHWARTZ & COHN LLP
Attorney for Trion Worlds, Inc.
2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226
(313) 465-7000
ngorga@honigman.com

DETROIT.4221186.1

# Exhibit A

FAXED

ORIGINAL

FILED

JUN - 3 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  LATHAM & WATKINS LLP
     Perry J. Viscounty (Bar No. 132143)
2  perry.viscounty@lw.com
     Andrew J. Fossum (Bar No. 250373)
3  andrew.fossum@lw.com
   650 Town Center Drive, 20th Floor
4  Costa Mesa, California 92626-1925
   Telephone: (714) 540-1235
5  Facsimile: (714) 755-8290

6  LATHAM & WATKINS LLP
     Jennifer L. Barry (Bar No. 228066)
7  jennifer.barry@lw.com
   600 West Broadway, Suite 1800
8  San Diego, California 92101-3375
   Telephone: (619) 236-1234
9  Facsimile: (619) 696-7419

10  Attorneys for Plaintiff
    TRION WORLDS, INC.

11

E-filing

12                UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

JCS

15  TRION WORLDS, INC., a Delaware
    corporation,                            Case No.

16                                          CV   10   2466
              Plaintiff,
17                                          COMPLAINT FOR:
         v.
18                                          **(1) DECLARATORY JUDGMENT OF
    PALLADIUM BOOKS, INC., a Michigan       NONINFRINGEMENT OF TRADEMARK,
19  corporation,                            NO FALSE DESIGNATION OF ORIGIN,
                                            AND NO UNFAIR COMPETITION**
20            Defendant.
                                            **(2) DECLARATORY JUDGMENT THAT
21                                          TRADEMARK REG. NO. 2,889,353 IS
                                            DESCRIPTIVE AND UNENFORCEABLE**
22
                                            **(3) CANCELLATION OF FEDERAL
23                                          TRADEMARK REG. NOS. 2,045,806;
                                            3,036,181; AND 3,213,944**
24
                                            **DEMAND FOR JURY TRIAL**
25

26

27         Plaintiff, Trion Worlds, Inc. ("Trion Worlds" or "Plaintiff"), for its Complaint

28  against Palladium Books, Inc. ("Palladium Books" or "Defendant"), alleges as follows:

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

1.     This is a civil action seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (1) of non-infringement of trademark, no false designation of origin, and no unfair competition under the Lanham Act, 15 U.S.C. § 1114(a) and 15 U.S.C. § 1125(a); and (2) that Defendant's Registered Trademark No. 2,889,353 is descriptive, lacks secondary meaning, and is unenforceable.  This action is also seeking the cancellation of Defendant's Registered Trademarks Nos. 2,045,806; 3,036,181; and 3,213,944 under 15 U.S.C. § 1064 and 15 U.S.C. § 1119.  Pursuant to 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over the claims arising from the Lanham Act.

2.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in the State of California to satisfy California's long-arm statute and Constitutional due process requirements.

3.     Venue in this Court exists under 28 U.S.C. § 1391(b)(1), as Defendant resides in this District, as well as under subsection (b)(2) because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District.

4.     Pursuant to Local Rule 3-2, this action may be assigned to the San Francisco division because the events alleged herein took place in San Mateo County, or may be assigned district-wide because the Complaint involves intellectual property.

## PARTIES

5.     Plaintiff is a Delaware corporation having its principal place of business at 303 Twin Dolphin Drive, Suite 500, Redwood City, California 94065.

6.     On information and belief, Defendant is a Michigan corporation having its principal place of business at 39074 Webb Court, Westland, Michigan 48185.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Trion Worlds and the "Rift: Planes of Telara" MMO Game

7.     Trion Worlds is a cutting edge developer of connected video games.  Formed in 2006, Trion Worlds is currently developing three server-based massively multiplayer online ("MMO") games, including its highly-anticipated "Rift: Planes of Telara" fantasy game (the

"R:PoT Game").

8.      The R:PoT game is still under development, and is not yet operational.  When the R:PoT Game is launched, it will involve thousands of participants interacting and playing online.

9.      In late 2009, Trion Worlds decided on the "Rift: Planes of Telara" title, as that name appropriately captured the theme and storyline of the game, which involves a rich medieval world with swordplay, dragons, and magic, that is being torn apart by mysterious dimensional rifts.

10.     The R:PoT game is marketed under the "Rift: Planes of Telara" mark in conjunction with the "Trion Worlds" house mark.

11.     Trion Worlds launched the official website for the R:PoT Game on April 26, 2010, amidst much media fanfare. The website contains screenshots, concept art, short videos, descriptions of the game's storyline and characters, and user forums.

12.     Trion Worlds intends to feature its R:PoT Game at the upcoming 2010 E3 trade show, which is scheduled to be held in mid-June in Los Angeles.

13.     Plaintiff is the owner of Application Serial Number 85/020022 for the **RIFT: PLANES OF TELARA** mark for *"entertainment services, namely, providing online video games and computer games"* in Class 41.

### Palladium Books and its "Rifts" Books

14.     Palladium Books is a Michigan-based corporation that publishes books about various "pen and paper" role-playing games, all of which take place in the same "Megaverse" and follow the same set of master rules.

15.     According to its website, Palladium Books released a book entitled "Rifts" in 1990. The title "Rifts" apparently describes a key premise of the story: "The Earth we once knew is gone. It has joined the larger fraternity of magical worlds in the Megaverse® connected to countless alien worlds and dimensions via the Rifts and realities cross into one another."

16.     The cover of the original "Rifts" book included a phrase identifying the publisher – "Palladium Books presents:" – preceding the title.  Over the next few years, Palladium Books created several other books in the "Rifts" series which also included the same "house mark"

1  language and sometimes included a subtitle located beneath the "Rifts" title.

2     17.    With the advent of computers and video game consoles, Palladium Books' "pen

3  and paper" games became less relevant, and do not appear to enjoy much commercial success

4  anymore.

5     18.    Palladium Books and its RIFTS products are not well known outside of the small,

6  insular world of "pen and paper" role-playing games, and even within that market Palladium

7  Books and the RIFTS products do not have widespread recognition.

8     19.    The RIFTS books apparently had a brief period of renewed excitement in 2003

9  when it was announced that Walt Disney Studios had optioned the books for a potential movie,

10  but nothing has come of that relationship during the ensuing *seven years*, and there is nothing to

11  indicate that a movie based on the RIFTS books will ever be produced.

12     20.    The RIFTS books have never been adapted into a computer or video game that

13  experienced any level of success. Apparently a "RIFTS Game Master Companion" program was

14  released in 1995, but this software was not a game, and was actually a basic utility program that

15  aided customers in using the "pen and paper" RIFTS books. This software was apparently pulled

16  from the market after only a few months.

17     21.    In 2005, Palladium Books apparently developed a game for the Nokia N-Gage

18  cell phone entitled "Rifts: Promise of Power." However, by Defendant's own admission, this

19  game was "stillborn" and not available in North America. In fact, Defendant has conceded that it

20  "required an act of God" to find this game anywhere in North America.

21     22.    Plaintiff has been unable to locate any outlet offering the "Promise of Power" cell

22  phone game or the "Rifts Game Master Companion" software utility for purchase anywhere in

23  the United States.

24     23.    On information and belief, Defendant has never had any serious plans or

25  negotiations with a game developer to adapt the RIFTS books into an MMO or other online or

26  video game.

27     24.    The concept of inter-dimensional "rifts" is an extremely common theme in the

28  sci-fi and fantasy genres, and has been used in numerous books, movies, tv shows, "pen and

1   paper" games and video games, many of which long predate Palladium Books' use of the term.

2         25.     Palladium Books' RIFTS mark is descriptive and lacks secondary meaning, since

3   it merely describes the common sci-fi/fantasy storytelling element of inter-dimensional rifts that

4   is used throughout Palladium Books' RIFTS products.

5                     Palladium Books' Trademark Registrations

6         26.     Defendant claims to be the owner of several federal registrations, including:

7         •    No. 2,045,806 for the RIFTS mark for "*computer game software and*

8               *computer game programs containing role playing games involving science*

9               *fiction or fantasy adventures, or involving character generation or*

10              *scenario generation*" in Class 28 (registered March 18, 1997) (the "'806"

11              Registration).

12         •    No. 3,036,181 for the RIFTS mark for "*Production of motion pictures,*

13               *television programs, videotapes and DVDs involving science fiction and*

14              *fantasy adventures*" in Class 41 (registered December 27, 2005) (the

15              "'181" Registration).

16         •    No. 2,889,353 for the RIFTS mark for "*Books, manuals and comic books*

17               *containing role playing games involving science fiction or fantasy*

18               *adventures, rules and data for playing role playing games, and novels and*

19               *other books that contain such games, characters, or settings*" in Class 16

20              (registered September 28, 2004) (the "'353" Registration).

21         •    No. 3,213,944 for the PROMISE OF POWER mark for "*Video game*

22               *cartridges; video game discs; video game interactive control floor pads or*

23               *mats; video game interactive remote control units; video game joysticks;*

24               *video game machines for use with televisions; video game software; video*

25               *game tape cassettes*" in Class 9 and "*games and toys, namely, role playing*

26               *and fantasy games; collectible card games; trading card games; action*

27               *figure games; board games; game materials, namely, game equipment,*

28               *instruction and game tip manuals; toy action figures and accessories*

therefor; *toy miniature figures; toy armor; toy weapons; toy vehicles; electrical and mechanical toys; video game machines, namely, handheld and stand alone units*" in Class 28. (registered February 27, 2007) (the "'944" Registration).

### The Parties' Respective Products and the MMO Market

27. Plaintiff's "Rift: Planes of Telara" MMO game and Defendant's RIFTS series of "pen and paper" game books are highly distinct products, and the use of the term "rift" in both titles is not likely to confuse consumers.

28. The "Rift: Planes of Telara" game includes the unique and memorable subtitle "Planes of Telara" that allows potential customers to easily distinguish it from any of Defendant's products.

29. The "Rift: Planes of Telara" game is promoted on a website in conjunction with Trion Worlds' prominent house mark, and Defendant's books generally appear to either have a statement reading "Palladium Books Presents:" on the cover or the Palladium Books logo. The consistent and conspicuous use of house marks by both parties clearly distinguishes their respective products.

30. Video game enthusiasts generally refer to MMO games using acronyms. For example, one of the most popular MMO games, "World of Warcraft," is often referred to as "WoW." Similarly, gamers have already begun to refer to the upcoming "Rift: Planes of Telara" game as "R:PoT" and will likely continue to do so. Defendant offers no products with the "R:PoT" acronym, and thus consumers are unlikely to confuse the parties' respective products.

31. Plaintiff's R:PoT Game is an MMO game that involves cutting-edge graphics, thousands of people interacting with each other, and is played on a computer. In contrast, Defendant's RIFTS "pen and paper" games are played a few people by sitting around a table, rolling dice, and talking about characters.

32. The R:PoT Game takes place in the imaginary world of "Telara" and involves interactions with elves, monsters, and swordplay. Defendant's RIFTS series of books takes place in a future, post-apocalyptic version of earth, and involves interactions with robots, cyborgs, and

1    futuristic weapons.

2         33.    Consumers of MMO games are extremely sophisticated and knowledgeable about

3    them, and it is not uncommon for consumers to commit hundreds or even thousands of hours per

4    year playing to build their status in the online world.

5         34.    Given the considerable amount of time expended, consumers exercise a high

6    degree of care in selecting which games they subscribe to.  Entire websites are devoted to the

7    topic and gamers usually actively participate in forums and chatrooms to discuss games in detail.

8         35.    Consequently, MMO game users are extremely unlikely to purchase or use a

9    game they are unfamiliar with and have not researched, and would never mistake Plaintiff's

10   cutting-edge MMO video game for Defendant's "pen and paper" game books.

11                 **Palladium Books' Prosecution of the '353 Registration**

12                      The '353 Registration is Not Incontestable

13        36.    On October 23, 2003 Palladium Books filed a trademark application which

14   eventually matured into the '353 Registration on September 28, 2004.

15        37.    According to the USPTO records available as of June 3, 2010, Palladium Books

16   had not yet satisfied the requirements under 15 U.S.C. § 1065 to obtain incontestable status for

17   that registration.

18                 **Palladium Books' Prosecution of the '806 Registration**

19                     The '806 Registration was Obtained Through Fraud

20        38.    On March 4, 1996, Palladium Books filed a use-based application to register

21   **RIFTS** for *"computer game software and programs containing role playing games involving*

22   *science fiction or fantasy adventures, or involving character generation or scenario generation"*

23   in Class 9.  The '806 Registration claimed a first use date of May 31, 1995.

24        39.    In response to an office action, Palladium Books amended the statement of goods

25   to *"computer game software and computer game programs containing role playing games*

26   *involving science fiction or fantasy adventures, or involving character generation or scenario*

27   *generation"* in Class 28.

28        40.    As specimens to support the underlying application for the '806 Registration,

1 | Palladium Books filed copies of disk labels, a page from an instructional manual, and a license

2 | terms sheet for a program called **RIFTS GAME MASTER COMPANION**.

3 |     41.    By and through its application, response to the office action, and submitted

4 | specimens, Palladium Books represented to the USPTO that it was using the mark in commerce

5 | on or in connection with "*computer game software and computer game programs containing*

6 | *role playing games involving science fiction or fantasy adventures, or involving character*

7 | *generation or scenario generation*" and that the adopted statement of goods accurately described

8 | the submitted specimens. Palladium Books made those representations to induce the USPTO to

9 | issue the '806 Registration. Those representations were material to the issuance of the '806

10 | Registration, and on information and belief, the USPTO relied on those representations in issuing

11 | the '806 Registration under Registration Number 2,045,806 on March 18, 1997.

12 |     42.    By its own admission on its website at <*http://www.palladium-*

13 | *megaverse.com/cuttingroom/rgmc/rgmc2.html*>, the goods listed in, and the specimens used to

14 | support the '806 Registration were not actually in use at the time the application for the '806

15 | Registration was filed. Specifically, the text in <*http://www.palladium-*

16 | *megaverse.com/cuttingroom/rgmc/rgmc2.html*> states "The [**RIFTS GAME MASTER**

17 | **COMPANION**] software made it to the market but only lasted a few months before it was

18 | pulled due to bugs." Further, based on the user manual for the **RIFTS GAME MASTER**

19 | **COMPANION** available on the Palladium Books website, the **RIFTS GAME MASTER**

20 | **COMPANION** cannot accurately be described as "*computer game software*" or a "*computer*

21 | *game program.*"

22 |     43.    Thus, Palladium Books' representations to the USPTO that it was using the mark

23 | in commerce on or in connection with "*computer game software*" or "*computer game programs*"

24 | and that the adopted statement of goods accurately described the submitted specimens were false,

25 | Palladium Books knew those representations were false when they were made, and Palladium

26 | Books made those representations with the intent to deceive the USPTO.

27 | <u>The '806 Registration was Maintained Through Fraud</u>

28 |     44.    On February 18, 2003, Palladium Books filed its Combined Declaration of Use

1  and Incontestability under Sections 8 and 15 (the "8 & 15 Declaration") to maintain its '806

2  Registration.  In the 8 & 15 Declaration, Palladium Books made verified statements about its use

3  of the '806 Registration on all of the goods listed in the application and subsequent registration.

4  Specifically, Palladium Books stated, "The owner has used the mark in commerce for five

5  consecutive years after the date of registration, or the date of publication under Section 12(c),

6  and is still using the mark in commerce on or in connection with all goods and/or services listed

7  in the existing registration."

8         45.     As specimens to support the 8 & 15 Declaration, Palladium Books submitted

9  images described as "JPEG image of RIFTS Role-Playing Game book from

10  www.palladiumbooks.com catalog."  On information and belief, the submitted specimens

11  depicted a book released in or about 1990, not *computer game software*" or "*computer game*

12  *programs*."

13        46.     By and through its 8 & 15 Declaration and accompanying submitted specimens,

14  Palladium Books represented to the USPTO that it had used the mark in commerce for five

15  consecutive years after the date of registration, or the date of publication under Section 12(c),

16  and was still using the mark in commerce on or in connection with all goods and/or services

17  listed in the '806 Registration and that the submitted specimens evidenced that use.  Palladium

18  Books made those representations to induce the USPTO to allow Palladium Books to maintain

19  the '806 Registration and to accept Palladium Books' affidavit under 15 U.S.C. § 1065(3).

20  Those representations were material to the maintenance of the '806 Registration and acceptance

21  of the affidavit under 15 U.S.C. § 1065(3), and on information and belief, the USPTO relied on

22  those representations in allowing Palladium Books to maintain the '806 Registration and accept

23  the affidavit under 15 U.S.C. § 1065(3).

24        47.     By its own admission as explained in Paragraph 42 above, Palladium Books

25  "pulled [the **RIFTS GAME MASTER COMPANION**] from the market" shortly after

26  launching the program in 1995, and even setting aside when it was "pulled from the market," the

27  specimen submitted did not support the application for the '806 Registration in the first instance.

28  As explained above, the specimens submitted with Palladium Books' 8 & 15 Declaration depict

1  a book, not "*computer game software*" or "*computer game programs.*"  On information and

2  belief, during the time period from issuance of the '806 Registration to the filing of the 8 & 15

3  Declaration, Palladium Books did not use the mark in commerce on or in connection with any

4  other goods and/or services fitting the description listed in the '806 Registration.

5     48.    Based on the foregoing, Palladium Books' representations to the USPTO that it

6  had used the mark in commerce for five consecutive years on or in connection with all goods

7  and/or services listed in the '806 Registration, that it was still using the mark in commerce on or

8  in connection with those goods and/or services, and that the specimens submitted evidenced that

9  use were false, Palladium Books knew those representations were false when they were made,

10  and Palladium Books made those representations with the intent to deceive the USPTO.

The '806 Registration was Renewed Through Fraud

12     49.    On February 12, 2007, Palladium Books filed its Combined Declaration of Use In

13  Commerce & Application For Renewal of Registration Under Sections 8 and 9 (the "Renewal

14  Declaration") to renew the '806 Registration.  The Renewal Declaration specifically states, ". . .

15  the owner, or its related company, is using the mark in commerce on or in connection with the

16  goods and/or services identified [in the '806 Registration] as evidenced by the attached

17  specimen(s) showing the mark as used in commerce."

18     50.    As a specimen to support the Renewal Declaration, Palladium Books submitted an

19  image described as a "Digital image of RIFTS game book."  On information and belief, the

20  submitted specimen depicted a book released in or about 2005, not "*computer game software*" or

21  "*computer game programs.*"

22     51.    By and through its Renewal Declaration and accompanying submitted specimen,

23  Palladium Books represented to the USPTO that it was still using the mark in commerce on or in

24  connection with all goods and/or services listed in the '806 Registration and that the submitted

25  specimen evidenced that use.  Palladium Books made those representations to induce the USPTO

26  to renew the '806 Registration.  Those representations were material to the renewal of the '806

27  Registration, and on information and belief, the USPTO relied on those representations in

28  renewing the '806 Registration.

52.     As explained above in, Palladium Books had not previously used the mark in commerce on or in connection with all goods and/or services listed in the '806 Registration. Also as explained above, the specimen submitted with Palladium Books' Renewal Declaration depicts a book, not "*computer game software*" or "*computer game programs.*"  On information and belief, during the time period leading up to and at the filing of the Renewal Declaration, Palladium Books had not used and was not using the mark in commerce on or in connection with any other goods and/or services fitting the description listed in the '806 Registration.

53.     Based on the foregoing, Palladium Books' representations to the USPTO that it was using the mark in commerce on or in connection with all goods and/or services listed in the '806 Registration and that the specimen submitted evidenced that use were false, Palladium Books knew those representations were false when they were made, and Palladium Books made those representations with the intent to deceive the USPTO.

### The Prosecution of the '181 Registration

<u>The '181 Registration was Obtained Through Fraud</u>

54.     On July 9, 2002, Palladium Books filed an intent-to-use based application to register **RIFTS** for "*production of motion pictures, television programs, videotapes and DVDs involving science fiction and fantasy adventures*" in Class 41.

55.     The USPTO published the application on January 21, 2003, and issued a notice of allowance on April 15, 2003.

56.     Because the '181 Registration was based on an intent-to-use the mark, after the mark was published, Palladium Books was required to file a statement of use before the '181 Registration would be granted.  A maximum of five (5) six-month extensions of time were available to Palladium Books.

57.     After filing four extension requests (and after having "unintentionally" abandoned the application and later reviving it), Palladium Books filed on October 14, 2005 a Statement of Use.

58.     In the Statement of Use, Palladium Books stated it was "using . . . the mark in commerce on or in connection with the goods [services] . . ." listed in the application (*production*

1  of motion pictures, television programs, videotapes and DVDs involving science fiction and

2  fantasy adventures in Class 41); and that the '181 Registration was "first used . . . at least as

3  early as August 18, 2005" and that the mark "is still in use."

4       59.    By and through its Statement of Use, accompanying declaration and specimens,

5  Palladium Books represented to the USPTO that it had used the mark in commerce in connection

6  with "production of motion pictures, television programs, videotapes and DVDs involving

7  science fiction and fantasy adventures," and was still using the mark in commerce on or in

8  connection with all the goods and/or services listed in the application, and that the submitted

9  specimens evidenced that use. Palladium Books made those representations to induce the

10  USPTO to allow Palladium Books to obtain the '181 Registration. Those representations were

11  material to the issuance of the '181 Registration, and on information and belief, the USPTO

12  relied on those representations in issuing the '181 Registration Number 3,036,181 on December

13  27, 2005.

14       60.    Knowing its Statement of Use and supporting evidence was false, four minutes

15  after filing the Statement of Use on October 14, 2005, Palladium Books also filed a fifth request

16  for extension of time stating that "[a] Statement of Use is being submitted along with the

17  Extension request as evidence that applicant believes that it has made valid use of the mark in

18  commerce. If the USPTO finds the Statement of Use to be fatally defective, the applicant

19  requests additional time to file an amended or substitute Statement of Use."

20       61.    By its own admission in an open letter in its on-line forum at

21  <http://forums.palladium-megaverse.com>, the services listed in, and the specimens used to

22  support the '181 Registration were not actually in use at the time the Statement of Use (or

23  application) for the '181 Registration was filed. Specifically, in the text in

24  <http://forums.palladium-megaverse.com>, Palladium Books' president, Kevin Siembieda states

25  that the video game was "stillborn" and not available in the United States. Further, Siembieda

26  stated the **RIFTS: Promise of Power** game (depicted in the specimen of use) "never took off in

27  North America. . . and would NOT be available on the mass market in the USA . . ." and that

28  "[f]inding it anywhere in North America required an act of God."

62.     Based on the foregoing, Palladium Books' representations to the USPTO that it was using the mark in commerce on or in connection with *"production of motion pictures, television programs, videotapes and DVDs involving science fiction and fantasy adventures"* and that the submitted specimens evidenced such use were false, Palladium Books knew those representations were false when they were made, and Palladium Books made those representations with the intent to deceive the USPTO.

### The Prosecution of the '944 Registration

### The '944 Registration was Obtained Through Fraud

63.     On October 20, 2004, Palladium Books filed an application to register PROMISE OF POWER for *"video game cartridges; video game discs; video game interactive control floor pads or mats; video game interactive remote control units; video game joysticks; video game machines for use with televisions; video game software; videogame tape cassettes* in Class 9 and *games and toys, namely, role playing and fantasy games; collectible card games; trading card games; action figure games; board games; game materials, namely, game equipment, instruction and game tip manuals; toy action figures and accessories therefor; toy miniature figures; toy armor; toy weapons; toy vehicles; electrical and mechanical toys; video game machines, namely, handheld and stand alone units"* in Class 28.

64.     The USPTO published the application on September 27, 2005, and issued a notice of allowance on December 20, 2005.

65.     Because the '944 Registration was based on an intent to use the mark, after the mark was published, Palladium Books was required to file a Statement of Use before the '944 Registration would be granted.  Palladium Books filed that Statement of Use on June 19, 2006.

66.     In the Statement of Use states Palladium Books stated it was "using. . . the mark in commerce on or in connection with the goods . . ." listed in the application, and that the '944 Registration was "first used . . . at least as early as January 1, 2006" and that the mark "is still in use," and that the mark is in use as evidenced in the specimen submitted with the Statement of Use.

67.     By and through its Statement of Use, accompanying declaration and specimens,

1  Palladium Books represented to the USPTO that it had used the mark in commerce connection

2  with all the goods listed in the application, and that the submitted specimens evidenced that use.

3  Palladium Books made those representations to induce the USPTO to allow Palladium Books to

4  obtain the '944 Registration. Those representations were material to the issuance of the '944

5  Registration, and on information and belief, the USPTO relied on those representations in issuing

6  the '944 Registration Number 3,213,944 on February 27, 2007.

7        68.    The Statement of Use was also accompanied by a specimen of use described as a

8  "snapshot of website advertising RIFTS: Promise of Power video game, with photo of Mark on

9  product."

10        69.    On December 15, 2006, Palladium Books submitted a specimen for the Class 28

11  goods, specifically an excerpt from a user guide for the game.

12        70.    On information and belief, the mark in the '944 Registration was not in use for all

13  of the goods covered in the application and notice of allowance, specifically, *video game*

14  *cartridges; video game discs; video game interactive control floor pads or mats; video game*

15  *interactive remote control units; video game joysticks; video game machines for use with*

16  *televisions; video game software; videogame tape cassettes* in Class 9 and *games and toys,*

17  *namely, role playing and fantasy games; collectible card games; trading card games; action*

18  *figure games; board games; game materials, namely, game equipment, instruction and game tip*

19  *manuals; toy action figures and accessories therefor; toy miniature figures; toy armor; toy*

20  *weapons; toy vehicles; electrical and mechanical toys; video game machines, namely, handheld*

21  *and stand alone units* in Class 28.

22        71.    By its own admission in an open letter in its on-line forum at

23  *<http://forums.palladium-megaverse.com>*, the services listed in, and the specimens used to

24  support the '944 Registration, were not actually in use at the time the Statement of Use (or

25  application) for the '944 Registration was filed. Specifically, in the text in

26  *<http://forums.palladium-megaverse.com>*, Palladium Books' president, Kevin Siembieda states

27  that the video game was "stillborn" and not available in the United States. Further, Siembieda

28  stated the **RIFTS: Promise of Power** game (depicted in the specimen of use) "never took off in

1 North America. . . and would NOT be available on the mass market in the USA . . ." and that

2 "[f]inding it anywhere in North America required an act of God."

3      72.     Based on the foregoing, Palladium Books' representations to the USPTO that it

4 was using the mark in commerce on or in connection with "*video game cartridges; video game*

5 *discs; video game interactive control floor pads or mats; video game interactive remote control*

6 *units; video game joysticks; video game machines for use with televisions; video game software;*

7 *videogame tape cassettes* in Class 9 and *games and toys, namely, role playing and fantasy*

8 *games; collectible card games; trading card games; action figure games; board games; game*

9 *materials, namely, game equipment, instruction and game tip manuals; toy action figures and*

10 *accessories therefor; toy miniature figures; toy armor; toy weapons; toy vehicles; electrical and*

11 *mechanical toys; video game machines, namely, handheld and stand alone units*" in Class 28

12 and that the submitted specimens evidences such use were false, Palladium Books knew those

13 representations were false when they were made, and Palladium Books made those

14 representations with the intent to deceive the USPTO.

15                              **Procedural History**

16      73.     Palladium Books filed a complaint against Trion Worlds on May 7, 2010 in the

17 Eastern District of Michigan alleging various trademark-related claims, including infringement

18 of the '806, '181, and '353 Registrations.

19      74.     Palladium filed an amended complaint in the Eastern District of Michigan on

20 May 27, 2010.

21      75.     Trion Worlds filed a motion to dismiss the Michigan action for lack of personal

22 jurisdiction and improper venue, and in the alternative to transfer venue to the Northern District

23 of California and to dismiss Palladium Books' trademark dilution claim for failure to state a

24 claim on May 31, 2010.

25                            **FIRST CLAIM FOR RELIEF**

26               **Declaratory Judgment Act, 28 U.S.C. § 2201**

27     **Declaration of Noninfringement, No False Designation of Origin, and No Unfair**

28                               **Competition**

76.     Trion Worlds incorporates by reference paragraphs 1 through 75 above as though fully set forth herein.

77.     An actual and justiciable controversy has arisen and now exists between Trion Worlds and Palladium Books concerning their respective rights and duties with respect to (i) the marks used by Trion Worlds in connection with the R:PoT Game, and (ii) Palladium Books' RIFTS and PROMISE OF POWER marks, (collectively, (i)-(ii) are "the Marks").

78.     Trion Worlds desires a judicial determination of its rights and duties and a declaration as to the parties' rights and obligations with respect to the Marks.

79.     A judicial determination is necessary and appropriate at this time under the circumstances so that Trion Worlds may ascertain its rights and duties with respect to the Marks.

80.     Trion Worlds has not and does not infringe any valid trademark rights that Palladium Books may have in the Marks.  Trion Worlds' use of any of the Marks is not likely to cause confusion, to cause mistake, or to deceive the consuming public as to the source of origin, source, or affiliation.

81.     Trion Worlds seeks a declaration that it has not and does not infringe any of Palladium Books' rights in the Marks and has not and does not engage in any false designation of origin or unfair competition under 15 U.S.C. § 1114, 15 U.S.C. § 1125.

## SECOND CLAIM FOR RELIEF

## Declaratory Judgment Act, 28 U.S.C. § 2201

**Declaration that the '353 Registration is Descriptive and Lacks Secondary Meaning**

82.     Trion Worlds incorporates by reference paragraphs 1 through 81 above as though fully set forth herein.

83.     An actual and justiciable controversy has arisen and now exists between Trion Worlds and Palladium Books concerning whether Trion Worlds is infringing Palladium Books' '353 Registration.

84.     Trion Worlds desires a judicial determination of its rights and duties and a declaration as to the parties' rights and obligations with respect to whether the '353 Registration

1   is merely descriptive and lacks secondary meaning, and whether Palladium Books has any

2   protectable rights in its '353 Registration.

3         85.     A judicial determination is necessary and appropriate at this time under the

4   circumstances so that Trion Worlds may ascertain whether the '353 Registration is merely

5   descriptive and lacks secondary meaning, and whether Palladium Books has any protectable

6   rights in its '353 Registration.

7         86.     Trion Worlds seeks a declaration that Palladium Books' '353 Registration is

8   merely descriptive, lacks secondary meaning, and is not entitled to trademark protection under

9   the Lanham Act or common law.

10                          **THIRD CLAIM FOR RELIEF**

11   **Cancellation of Federal Registrations Under 15 U.S.C. § 1064 and 15 U.S.C. § 1119**

12        87.     Trion Worlds incorporates by reference the contents of paragraphs 1 through 86

13   above as though fully set forth herein.

14        88.     On information and belief, Palladium Books engages in a pattern and practice of

15   fraudulently procuring, maintaining and renewing trademark registrations that exceed the scope

16   of what Palladium Books' evidence of use can support. Accordingly, Trion Worlds is seeking

17   the cancellation of multiple registrations owned by Palladium Books.

18        89.     As outlined above, Palladium Books' '806 Registration was obtained through

19   fraud, maintained and rendered incontestable through fraud, and renewed through fraud. The

20   '806 Registration is therefore invalid and should be cancelled in its entirety pursuant to 15

21   U.S.C. § 1064 and 15 U.S.C. § 1119.

22        90.     As outlined above, Palladium Books' '181 Registration was obtained through

23   fraud and is invalid. The '181 Registration should be cancelled in its entirety pursuant to 15

24   U.S.C. § 1064 and 15 U.S.C. § 1119.

25        91.     As outlined above, Palladium Books' '944 Registration was obtained through

26   fraud and is invalid. The '944 Registration should be cancelled in its entirety pursuant to 15

27   U.S.C. § 1064 and 15 U.S.C. § 1119.

28        92.     Trion Worlds is being damaged by the fraudulently-obtained '806, '181, and

'944 Registrations, because those registrations have either been asserted against Trion Worlds in litigation or may be asserted against Trion Worlds in future lawsuits or opposition/cancellation proceedings.

## **PRAYER FOR RELIEF**

WHEREFORE, Trion Worlds prays for the following relief:

A.   For a declaratory judgment that:

    1.   Trion Worlds has not and does not infringe any of Palladium Books' rights in the Marks and has not and does not engage in any false designation of origin or unfair competition under 15 U.S.C. § 1114, 15 U.S.C. § 1125; and

    2.   Palladium Books' '353 Registration is merely descriptive, lacks secondary meaning, and is not entitled to trademark protection under the Lanham Act or common law.

B.   For an order canceling Defendant's Registered Trademarks Nos. 2,045,806; 3,036,181; and 3,213,944 under 15 U.S.C. § 1064 and 15 U.S.C. § 1119.

C.   For costs;

D.   For such other and further relief as the Court may deem just and proper.

Dated: June 3, 2010                 LATHAM & WATKINS LLP

By: _____
    Jennifer L. Barry

Attorneys for Plaintiff
TRION WORLDS, INC.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 3-6, Plaintiff demands a trial by jury.

Dated: June 3, 2010                 LATHAM & WATKINS LLP

By: _____
    Jennifer L. Barry

Attorneys for Plaintiff
TRION WORLDS, INC.

JS-44 (Rev. 12/07) (CAND Rev 1/10)    **CIVIL COVER SHEET**    **ORIGINAL**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

TRION WORLDS, INC., a Delaware corporation

## DEFENDANTS

PALLADIUM BOOKS, INC., a Michigan corporation

**(b)** County of Residence of First Listed Plaintiff  San Mateo County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

PLEASE SEE ATTACHMENT HERETO

Attorneys (If Known)

JCS    E-filing    ADR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 2201; 15 U.S.C. § 1114(a); 15 U.S.C. § 1125(a); 15 U.S.C. § 1064; and 15 U.S.C. § 1119

Brief description of cause:
Civil action seeking declaratory relief of non-infringement, no false designation of origin, and no unfair competition

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION    DEMAND $ As Proven    CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23                                          JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA

DATE    SIGNATURE OF ATTORNEY OF RECORD

# ATTACHMENT TO CIVIL COVERSHEET

**Section I(c)  Attorney's (Firm Name, Address, and Telephone Number):**

**Attorneys for Plaintiff:**

LATHAM & WATKINS LLP
   Perry J. Viscounty (Bar No. 132143)
perry.viscounty@lw.com
   Andrew J. Fossum (Bar No. 250373)
andrew.fossum@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California  92626-1925
Telephone:  (714) 540-1235
Facsimile:  (714) 755-8290

LATHAM & WATKINS LLP
   Jennifer L. Barry (Bar No. 228066)
jennifer.barry@lw.com
600 West Broadway, Suite 1800
San Diego, California  92101-3375
Telephone:  (619) 236-1234
Facsimile:  (619) 696-7419