UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PALLADIUM BOOKS, INC.**,
a Michigan corporation,

              Plaintiff,

v.

**TRION WORLDS, INC.,**
a Delaware corporation, and
**TRION WORLD NETWORK, INC.,**
a Delaware corporation,

              Defendants.

Case No. 10-11859

District Judge Hon. Julian Abele Cook

Magistrate Judge Hon. Paul J. Komives

_____/

| | |
|---|---|
| Peter M. Falkenstein (P61375) | Nicholas B. Gorga (P72297) |
| Lawrence R. Jordan (P27169) | Honigman Miller Schwartz & Cohn, LLP |
| Joan H. Lowenstein (P39422) | 2290 First National Bldg. |
| Emilija Avsharian (P72001) | 660 Woodward Ave. |
| Jaffe Raitt Heuer & Weiss, PC | Detroit, MI 48226 |
| 201 S. Main St., Suite 300 | (313) 465-7000 |
| Ann Arbor, Michigan 48104 | ngorga@honigman.com |
| (734) 222-4776 | *Attorneys for Defendants* |
| pfalkenstein@jaffelaw.com | |
| *Attorneys for Plaintiff* | |

_____/

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY
<u>LIMITED TO THE ISSUE OF PERSONAL JURISDICTION</u>**

Plaintiff Palladium Books, Inc. filed this action in this Court confident in belief that this Court has personal jurisdiction over the Defendant Trion Worlds, Inc. (conceded by Defendant to be one and the same company as Defendant Trion World Network, Inc., having merely changed its name recently.)  Defendant states on its website that:

> Trion Worlds *is* the premier publisher and developer of connected video games. With groundbreaking new server platform capabilities, Trion *delivers* high-quality, fully dynamic and massively social content across video game genres, gaming platforms and mass market entertainment formats.

(Exh. 11 to FAC, printout from Trion website.)  The "connected video games" and "massively social content" Trion claims to be delivering currently to "mass markets" is the MMORPG games that are the focus of its business model.  MMORPGs, as shown by evidence already submitted are designed to be marketed nationally and internationally, to obtain thousands or even millions of subscribers.  There is no doubt that a substantial number of Trion subscribers would be in Michigan.

Trion castigates Palladium for having assumed, based on Trion's own assertions, that it was carrying on business on a worldwide basis, including in Michigan. (Response Brf. at 2). Now, however, Trion states, it has actually never done any business at all in the MMO market, apparently having falsely claimed to be the "premier publisher" of connected video games. Nonetheless, as demonstrated in Palladium's response to Trion's motion to dismiss for lack of jurisdiction, Palladium believes it has demonstrated a *prima facie* case that Trion has sufficient contacts with Michigan, given that it is accused of infringing the trademarks of Michigan resident Palladium, under the accepted principle that trademark infringement, plus some additional factors, confers personal jurisdiction over a defendant in the Plaintiff's home forum. (*See generally* Pl. Response to Motion to Dismiss [D/E 22] and cases cited therein.)

1

Trion also complains that Palladium, in seeking limited discovery, is itself seeking to delay a ruling on its preliminary injunction motion.  Trion misperceives Palladium's motion.  Palladium filed its motion for leave to conduct limited expedited discovery in conjunction with its response to Plaintiff's motion to dismiss, so that *in the event* the Court does not find personal jurisdiction based on the current state of the record, Palladium may flesh out that record in ways relevant to the specific issue of personal jurisdiction.  Given the pendency of Palladium's preliminary injunction, Palladium could not take the time to conduct discovery prior to a hearing on the injunction, which would have meant that the motion for injunction could not be heard prior to a key event at which Palladium seeks to enjoin use of the RIFT mark – the E3 Expo.

Indeed, if the Court finds jurisdiction is established per the current record, there will be no impediment to immediate entry of an injunction (if warranted on the merits), which is precisely what Palladium asks the Court to do.  But, if the Court finds that jurisdiction is still at issue, Palladium clearly should be given an opportunity to conduct the discovery that would permit the case to remain in its chosen forum, and for the Court to then proceed to rule on the motion for a preliminary injunction, even if that means at a later date.  Palladium should not lightly be displaced from its forum of choice, without the opportunity to demonstrate that jurisdiction is proper.

Trion's argument that Palladium unnecessarily delayed in seeking jurisdictional discovery is as disingenuous as its argument in response to the motion for preliminary injunction, that Palladium is guilty of laches.  Following service of the Complaint, Trion's counsel asked for an extension of time to respond and indicated a desire to engage in settlement talks.  Palladium agreed and for the next two weeks the parties had numerous settlement conversations.  Palladium

abstained from filing for an injunction or seeking leave for expedited discovery in order to save expenses for both parties while an informal resolution seemed possible.  Trion's argument, asserted twice now, that Palladium should be held liable for delay by agreeing to engage in settlement discussions at Trion's request is, at the very least, unsavory.

Trion also argues that Palladium and the Court should be satisfied with the statements made by Trion's declarant on the issue of jurisdiction.  (Def. Response at 5.)  However, the Dunne Declaration has already proved to be a document crafted by attorney wordsmithing and not designed to reveal all possibly relevant facts.  For example, while claiming that Trion has "not targeted any advertising or marketing at the State of Michigan," Trion clearly has been involved in an advertising resulting in large magazine ads promoting the Rift game being placed in major retail stores within a few miles of Palladium's offices.  Trion may not unilaterally decide that this is irrelevant information and thus try to conceal it by declarations regarding "targeted" advertising.

Further, the Dunne Declaration states that "Trion's website is passive" – which it is not, as it permits substantial interactivity with visitors.  Dunne also claims that the website "allows visitors only the ability to register for a free 'account' and to access free online forums to discuss the game or to sign up for a free online newsletter." (Id.)  The Declaration ignores the fact that Trion's website provides a link to allow visitors to enter Trion's contest offering a trip to Trion studios, see Exhibit 1, as well ignoring other features of the site, such as linking to Facebook, Twitter, and You Tube social network sites accessible to internet surfers, and providing materials for development of fan websites.

Trion consistently tries to bury the fact that Palladium is claiming trademark infringement and that the injury from that tort is felt primarily in Michigan.  The basis for Palladium's claim of

3

jurisdiction over Trion is the fact that Trion is committing the tort of trademark infringement in Michigan. Therefore, Palladium is not seeking to establish the traditional "minimum contacts" that Trion claims it does not have with Michigan. Rather, Palladium is seeking to show that the Trion's trademark infringement is the source of personal jurisdiction, and to the extent that the authorities require it, to demonstrate that there are "plus factors," i.e., "something more" that, in conjunction with the brunt of injury being felt in Michigan, satisfies jurisdictional requirements, viewing the "totality of the circumstances." *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763 (E.D. Mich. 2001); *SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211 (6th Cir. 2009); 4 MCCARTHY ON TRADEMARK, § 32:45.50. This is a very different proposition than establishing the standard "minimum contacts" test or exercising personal jurisdiction merely based on maintenance of a website that Trion would have the Court focus on.[1]

     Palladium is entitled to ascertain whether any additional plus factors exist – evidence of which would be in the control of Trion – if the Court does not believe that a *prima facie* showing has been made at this point. Moreover, under the "effects test," knowledge of the trademark holder's residence and that injury from intentionally infringing its mark would be felt in the forum state, is a supporting factor in finding jurisdiction. *See, e.g., Calder v. Jones*, 465 U.S. 783 (1984)[2]; *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, Ltd. P'ship,*

---

[1] For example, in *William R. Hague v. Puretech Water System, Inc.*, 2010 U.S. Dist. Lexis 48901 (S.D. OH 2010), relied on by Trion in its Reply to Palladium's Response to Motion to Dismiss, the Court found no personal jurisdiction over the out-of-state defendant, but the Court never considered or discussed the "effects test" in its ruling.

[2] The seminal Supreme Court case, *Calder v. Jones*, discussed in *QSR Automations, Inc. v. KRS Corporation LLC*, 2010 LEXIS 32174 (W.D. KY 2010) cited by Trion, held that where defendants wrote and edited an article that was published in a nationally distributed publication, which they knew would have a potentially devastating impact upon a resident of the forum state and that the brunt of the injury would be felt by plaintiff in the forum state where plaintiff lived and worked, personal jurisdiction was proper. Here, presumed due diligence performed by Trion prior to adopting its mark

4

34 F.3d 410 (7th Cir. 1994); *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763 (E.D. Mich. 2001).

Palladium should be entitled to discovery and full disclosure of, at the minimum:

- all internal communications and documents of Trion relating to Palladium or its Rifts game, to determine the extent to which Trion was aware of Palladium; that it might be infringing Palladium's marks; and that the injury would be felt in Palladium's home forum of Michigan;

- all advertising, promotions, and other materials that have been distributed in Michigan, "targeted" or otherwise;

- all contracts for distribution of product or advertising in Michigan, targeted or otherwise;

- a listing of all persons who have signed up for accounts with Trion (as locations may be ascertainable from e-mail addresses and internet IP addresses).

- a listing of all "fan sites" that have been established by Michigan residents;

- identification of contestants who have signed up for Trion's contest, including all those from Michigan.

**CONCLUSION**

For all the foregoing reasons, Palladium respectfully requests that, in the event the Court does not find that it has personal jurisdiction over the Defendant based on the current record, that Palladium be permitted to conduct limited discovery on that issue prior to a ruling on Defendant's motion to dismiss.

Respectfully submitted,

Dated: June 8, 2010

/s Peter M. Falkenstein
Peter M. Falkenstein (P61375)
Jaffe Raitt Heuer & Weiss, PC
201 S. Main St., Suite 300
Ann Arbor, Michigan 48104
(734) 222-4776
pfalkenstein@jaffelaw.com

---

would likely have uncovered that Palladium owned the Rifts marks and also that Palladium was located in Michigan, where injury would be most heavily felt.

CERTIFICATE OF SERVICE

I certify that on June 8, 2010, I filed the foregoing document with the Clerk of the Court, using the ECF system, which will provide electronic notice of the filing to the filing counsel of record:

Andrew M. Grove
jgrove@honigman.com

Nicholas B Gorga
ngorga@honigman.com

Date:  June 8, 2010          By:     /s/ Gina M. Williams
                                     Gina M. Williams