UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PALLADIUM BOOKS, INC.,
a Michigan corporation,

        Plaintiff,

v.                                                            Case Number:10-11859
                                                          Honorable Julian Abele Cook, Jr.

TRION WORLDS INC.,

        Defendant.

ORDER

      This lawsuit arises out of a trademark dispute between the Plaintiff, Palladium Books, Inc. ("Palladium") and the Defendants, Trion Worlds Inc., and Trion World Network, Inc.[1]  In an order dated June 1, 2010, the Court denied Palladium's request for a temporary restraining order, but scheduled a hearing on its request for a preliminary injunction.  On May 31, 2010, Trion filed a motion to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.[2]  In response to this dispositive motion, Palladium filed a motion in which it requested authority to conduct expedited discovery solely on the issue of jurisdiction.  This matter is now ripe for decision by the Court.

---

[1] Although Palladium sued Delaware-based Trion World Network, Inc. and Trion Worlds Inc., the two companies are the same.  According to the Defendant, Trion World Network changed its name to Trion Worlds on April 16, 2010.  *Defendant's Response in Opposition to Palladium's Request for Preliminary Injunction* at 1 fn.1. For the sole purpose of this order, the Court will refer to the two Defendants as "Trion."

[2] As an alternative basis for relief, Trion asks the Court to enter an order that will transfer the venue of this case to the Northern District of California where it has filed a separate action for, *inter alia,* declaratory relief involving the same disputed trademarks.

I.

Palladium, a corporation based in Westland, Michigan, is a publisher of science fiction and fantasy adventure role-playing games. To date, Palladium products have taken the form of paper-and-pencil games, card collections, and electronic computer games.

Formed in 2006, Trion is a developer of connected online video games with offices in Redwood City and San Diego, California and Austin, Texas. Although Trion has been actively developing online games for the past four years, the Company claims that it has neither sold nor offered to sell a single product anywhere in the United States, and has not targeted any of its marketing or advertising to the State of Michigan.

Palladium contends to have produced almost 90 of its most popular and renowned role-playing games under its federally registered trademarks[3] for the name RIFTS®. The use of this title is not coincidental. The word, "Rifts,"describes tears in the fabric of space and time that have served as portals through which alien, demonic and superhuman beings have traveled to infiltrate the Earth. According to Palladium, its gaming products are typically issued under the format of "Rifts _____," with the blank being filled by the secondary title of the particular game being played.[4]

---

[3]Palladium has proffered evidence of three of its federally protected trademarks; namely, (1) No. 2,889,353 [Registered September 28, 2004] for the name RIFTS used in connection with, *inter alia,* books, manuals and comic books containing role playing games involving science fiction or fantasy adventures; (2) No. 3,036,181 [Registered December 27, 2005] for the name RIFTS used for the production of motion pictures, television programs, videotapes and DVDs involving science fiction and fantasy adventures; and (3) No. 2,045,806 [Registered March 18, 1997] for the name RIFTS used in connection with, *inter alia*, computer game software and programs containing role playing games involving science fiction or fantasy adventures. Although Palladium also owns several other trademarks involving the RIFTS name and variations thereof, the three listed above are the most relevant to this lawsuit.

[4]The examples that are included in Palladium's first amended complaint are such games as "Rifts Promise of Power," "Rifts Chaos Earth," "Rifts Megaverse in Flames" or "Rifts Dark

In addition to its existing games, Palladium claims to be in negotiations with (1) Walt Disney Studios for the production of a major motion picture that is based on the Rifts® concept, and (2) companies interested in the use of the RIFTS concept to produce a massively multiplayer online role playing game ("MMORPG"). The parties agree that MMORPGs are computer games played simultaneously online by several thousand or even millions of users who subscribe to the game and play it interactively against others via the hosting company's server.

At issue here is Trion's development of a server-based MMORPG called "Rift: Planes of Telara," which the Company claims is not yet operational. Like other MMORPGs, this game will allow thousands of participants to interact while playing online. In its initial launch of the game in June of 2009, Trion referred to it as "Heroes of Telara." Yet, the Company changed the title of the game to "Rift: Planes of Telara" because, in its judgment, it captured the true theme and storyline of the game. On April 26, 2010, Trion unveiled the official website for "Rift: Planes of Telara" at www.riftgame.com. This website, which is available in three languages (English, French and German), allows visitors to sign up for a Trion account, join the "Rift: Planes of Telara" community and its associated forums, and to receive the official "Rift Watch" community newsletter. *See generally,* http://www.riftgame.com/en/news/listings/join-community.php.

The website also allows users to follow the development of "Rift: Planes of Telara" through third-party websites like Facebook, Twitter, Flickr and You Tube. *Id.* Furthermore, Trion has plans to feature the game at a major industry-only trade show (referred to as "E3") in Los Angeles between June 15-17, 2010. Trion claims that it has expended more than $500,000 in unrecoverable costs in launching the game and preparing for the show.

---

Conversion."

Kevin Siembieda, the president of Palladium, claims to have been shopping in a Target retail store less than two miles from his Company's headquarters in Westland, Michigan when he read an advertisement for "Rift: Planes of Telara" in a magazine entitled *Massive Online Gamer*. According to Siembieda, this advertisement included an announcement for a contest that was open to every resident of the United States and the District of Columbia, in which the winner would win a trip to the Trion studios in California. It is Siembieda's contention that this magazine was also sold at Barnes & Noble, Borders and other Target stores - all within five miles of Palladium's offices in Michigan.

## II.

Trion's chief defense, which has been raised pursuant to Fed. R. Civ. P. 12(b)(2), is that the Court lacks personal jurisdiction over it. In making this argument, Trion contends that - on the basis of the standards articulated in Michigan's long-arm statute, and according to fundamental due process considerations - Palladium has failed to proffer a legitimate jurisdictional basis for its claims in this case. Inasmuch as the Court will render a ruling on this issue without an evidentiary hearing, it must evaluate those pleadings and affidavits in a light that is most favorable to Palladium, which needs only to make a *prima facie* showing that jurisdiction exists. *Compuserve, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). Palladium can meet this burden by establishing with reasonable particularity the existence of sufficient contacts between Trion and the forum state to support jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). In undertaking an analysis under Fed. R. Civ. P. 12(b)(2), the Court need not weigh the controverting assertions of the defendant. *Dean* at 1272 (quoting *Compuserve* at 1262).

It is well-settled that in order to grant an injunction or award of money damages to a party,

4

a Court must have personal jurisdiction over the defendant. *See generally, Burger King Corp. V. Rudzewicz,* 471 U.S. 462, 471-72 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'") (internal citations omitted). Under both Michigan and federal law, a defendant can be subject to either general or specific jurisdiction. General jurisdiction is satisfied if the defendant's contacts with the forum state are sufficiently substantial, continuous and systematic to justify the state's exercise of judicial power with regard to the plaintiff's claims, even if none of the defendant's contacts are related to the facts of the case. 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §32:38; *See also,* Mich Comp Laws § 600.711. By contrast, specific jurisdiction subjects the defendant to a lawsuit in the forum state only on claims that arise out of or relate to a defendant's minimum contacts within the forum. *Fortis Corporate Ins. v. Viken Ship Management*, 450 F.3d 214, 218 (6th Cir. 2006); *See also,* Mich Comp Laws § 600.715. Here, the principal question is whether a court sitting in Michigan can assert specific jurisdiction over Trion under § 600.715 and due process limitations.

As to the question of specific jurisdiction under Michigan's long-arm statute, Mich Comp Laws § 600.715 explains when the state may assert limited long-arm jurisdiction over a corporation:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1)   The transaction of any business within the state.
> (2)   The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

        (3)        The ownership, use, or possession of any real or tangible personal property situated within the state.

        (4)        Contracting to insure any person, property, or risk located within this state at the time of contracting.

        (5)        Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich Comp Laws § 600.715. The parties appear to agree that based on the existing record, Subsections (1) and (2) are the only potentially applicable provisions here.

The "transaction of any business" which is necessary for limited personal jurisdiction under Mich Comp Laws § 600.715(1) can be satisfied by the "slightest act of business in Michigan." *Neogen, supra*, *citing Lanier v. American Bd. Of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988). Yet, even considering the pleadings and affidavits in a light most favorable to Palladium, it has not sufficiently shown the existence of any contacts between Trion and Michigan to support jurisdiction under §600.715(1). This is true notwithstanding the wide availability of Trion's website, its magazine advertisements, and its contest promotions to any person who happens to reside in a state (including Michigan) where the *Massive Online Gamer* magazine is sold, or from where the [www.riftgame.com](www.riftgame.com) website is available. Palladium's allegations of possible business transactions between Trion and Michigan consumers are not sufficient to establish personal jurisdiction under §600.715(1). *See, e.g., Hi-Tex Inc. v. TSG, Inc.*, 87 F. Supp. 2d 738, 743 (E.D. Mich. 2000) ("national advertising, alone, is insufficient to justify general personal jurisdiction. To hold otherwise would subject every business entity that advertises in a nationally distributed magazine to personal jurisdiction throughout the United States) (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993)). Although specific advertising which is directed toward Michigan may be a logical *future* expansion of Trion's marketing strategy, the fact remains that Palladium has not made a *prima facie* showing that Trion has

conducted even a "slight" act of business in Michigan. Thus, the Court declines Palladium's invitation to exercise personal jurisdiction over Trion under Mich Comp Laws§ 600.715(1).

Furthermore, even if the Court were inclined to find that Palladium had established personal jurisdiction over Trion through Mich Comp Laws§ 600.715(2) of Michigan's limited long-arm statute, this ruling would be subject to a determination as to whether an assertion of jurisdiction would deprive Trion of its basic rights of due process. *Bird v. Parsons*, *supra* at 871. In that regard, the Sixth Circuit has set forth three criteria that must be satisfied before a court may exercise personal jurisdiction:

> (1) First, there must be a showing that the defendant purposely availed himself of the privilege of acting in the forum state or causing a consequence in the forum state;
> (2) Second, the cause of action must arise from the defendant's activities there; and
> (3) Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus.*, *Inc*., 401 F.2d 374, 381 (6th Cir.1968). Palladium urges the Court to consider the facts and circumstances of this case in the aggregate and under the totality of the circumstances, as opposed to assessing them in isolation.

As to the first *Mohasco* factor, the Supreme Court has emphasized that the touchstone of the due process inquiry is whether the defendant purposefully established minimum contacts in the forum state. *Burger King Corp., supra* at 474. Thus, a plaintiff must show that the defendant did some act to "purposefully avail" itself of the privilege of doing business in Michigan. While it is not necessary for a defendant to be physically present in the forum, jurisdiction may be established if its actions were purposefully directed toward residents of the forum state. *Id.* at 476. The Michigan Supreme Court has described the term purposeful availment as "something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct

which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities." *Jeffrey v. Rapid American Corp.,* 448 Mich. 178, 187-188 (1995). In other words, it amounts to conduct that gives the defendant a basis upon which to foresee being hailed before a Michigan court. *Id.*

Here, Trion submits that it has no business contacts with Michigan other than its website, which it describes as an instrument of communication which is passive in nature. The Sixth Circuit has declared that a defendant purposefully avails itself of the privilege of acting in a state through its website "if [it] is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen, supra* at 890. However, the maintenance of an internationally accessible website does not in and of itself constitute purposeful availment of the privilege of acting in Michigan. *Id.* Indeed, this approach - if taken literally - would render the user of a potentially infringing mark subject to personal jurisdiction anywhere in the United States, or, for that matter, anywhere in the world. Yet, the vast majority of courts reject this view and instead require a showing that the party with the infringing website purposefully directed its activity at the forum state. 6 J. Thomas McCarthy <u>McCarthy on Trademarks and Unfair Competition</u>, §32:45.50.

In determining whether the operation of a website constitutes a purposeful availment under the *Burger King* test, courts generally divide sites into three categories:

(1)   *Active Web Sites*: . . . where defendants actively conduct business on the internet in the forum state and personal jurisdiction is found.

(2)   *Intermediate Web Sites*: interactive Web site cases . . . where a user exchanges data with the host computer. In such cases, jurisdiction is determined by examining the level of interactivity and commercial nature of the information exchange.

(3)     *Passive Web Sites*: sites that merely provide information or advertisements.

*Id* at § 32:45.50 (citing *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)); *See also, Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004).

Here, Trion's website cannot be fairly characterized as highly interactive, inasmuch as a visitor to the site has no ability to conduct business transactions. At most, a person who is interested in content on www.riftgame.com has the ability to enter personal information, join forums and receive newsletters. Trion devotes a significant portion of its pleading to trying to persuade the Court that its website is designed solely for passive use. However, this analysis is of no moment under the circumstances of this case. Inasmuch as the record is devoid of evidence that Palladium targeted any of its web-based activities toward Michigan residents, there is no legal basis for concluding that Trion had purposely availed itself of the privilege of acting in Michigan by maintaining its website.

As an alternative to the "purposeful availment" standard in the context of trademark infringement and/or internet usage cases, Palladium urges the Court to rely on what is known as an "effects test," that was formulated by the Supreme Court in *Calder v. Jones,* 465 U.S. 783 (1984). Based on the *Calder* theory, merely causing a negative effect in a particular forum can give rise to personal jurisdiction. Courts in this district have held that in order to satisfy the *Calder* analysis, three conditions must be met. First, the defendant must be charged with intentional actions, rather than "mere untargeted negligence." *Providers Access and Saving System, Inc. v. The Regence Group, Inc.*, No. 06-15367, 2007 WL 1106145, 6 (E.D. Mich. Apr. 12, 2007) (citing *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 773-74 (E.D. Mich. 2001)). Second, "the brunt of the injury must have been felt in the forum state." *Id.* Finally,

the Court must find that the defendant's acts were expressly aimed at the forum state. *Id.*

For the "effects doctrine" to apply, there must be something more than the infringing conduct to demonstrate that the defendant directed his activity toward the forum state. *Id.* at *7. As Trion correctly notes, courts have applied the "effects doctrine" with caution since a plaintiff will always feel the effect of a legal injury in its home state. *See, e.g., Audi, supra* at 746; *Ford, supra* at 774.

Palladium argues that given the popularity of its RIFTS® products, as well as proof that the mark has been used in the gaming industry for twenty years, it is highly unlikely that Trion's infringement upon the product could have resulted from negligence. By extension, Palladium submits that Trion's use of the RIFTS mark must therefore have been intentional. Nevertheless, the Court finds this argument to be speculative and unavailing inasmuch as Palladium has not made reference to any specific facts which would plausibly suggest that Trion acted with malice in choosing its mark. However, even if the Court assumed that (1) Trion had acted intentionally in misappropriating the RIFTS name, and (2) the brunt of the injury was felt in the forum state of Michigan, Palladium has failed to present any evidence to support its assertion that Trion's acts were "expressly aimed" at Michigan.

In its motion, Palladium suggests that by selecting an infringing name, maintaining an interactive website, Facebook page and a national contest which can be accessed by Michigan residents, and by stating that its product would be available in local stores, Trion has targeted its conduct toward Michigan. Nevertheless, the Court finds this argument unpersuasive. The record indicates that Trion has neither sold any goods or services to Michigan residents nor personalized any of its advertising campaigns to suit the tastes and demands of those MMORPG consumers

who reside in Michigan. Neither marketing in nationally distributed magazines nor advertising on widely accessible websites is sufficient to establish minimum contacts in a particular forum, even when considered in the aggregate. Absent something more substantial than Palladium's argument that "Trion will have hundreds, if not thousands of customers and substantial sales in Michigan in the very near future," the Court finds that Trion has not purposefully availed itself of the privilege of transacting business in Michigan, and therefore, is not subject to personal jurisdiction in Michigan courts.

In terms of the second *Mohasco* requirement (i.e. that the cause of action must arise from the defendant's activities in the forum state), Palladium contends that if it is determined that the infringing use of a mark was expressly aimed at the forum state, the second element of *Mohasco* is automatically satisfied. However, Palladium has not established that Trion's conduct was expressly aimed at Michigan. In light of this finding, the Court rejects Palladium's assertion that its cause of action arises out of any activity by Trion in the State of Michigan.

Finally, Palladium has failed to establish that the exercise of personal jurisdiction by the Court over Trion would be "reasonable" in the manner contemplated by *Mohasco*. In analyzing this factor, a court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). Applied here, the reasonableness inquiry tends to favor Trion, especially when it is viewed in light of the foregoing analysis about Trion's minimum contacts in Michigan. The Court finds it persuasive that Trion's headquarters, as well as its documents and primary evidence are located thousands of miles from Michigan. Moreover, because Palladium has not shown a strong

likelihood of confusion among the residents of Michigan, the state's interest in litigating the case is significantly diminished. Thus, notwithstanding Palladium's desire to obtain relief, the due process analysis must be resolved in favor of Trion.

III.

Palladium has filed a separate motion for leave to conduct discovery that would be expedited and limited to the issue of personal jurisdiction. There is case law which indicates that a court, in its discretion, may permit discovery so that an aggrieved party may investigate jurisdictional facts. *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991). Citing *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676 (D.C. Cir. 1996) (overruled on other grounds by *Samantar v. Yousuf,* ___ U.S. ___ (June 1, 2010). In making this request, Palladium asks the Court to grant its request in order to prevent Trion from asserting jurisdictional defenses by withholding information relating to its Michigan contacts. Specifically, Palladium seeks to examine evidence of, *inter alia,* Trion's (1) contracts or agreements with Michigan companies or residents; (2) negotiations with Michigan suppliers, retailers or distributors; (3) advertising targeted toward Michigan or otherwise distributed to Michigan consumers; (4) marketing plans;(5) shareholders or negotiations in Michigan for investment partners; (6) potential customers who have signed up for Trion accounts; and (7) listing of contestants who have enrolled for Trion's contest, including Michigan residents. Although the Plaintiff avers that it has a good faith belief that discovery will support its position, it does little to substantiate the factual basis for its request. "[W]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst Of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 402 (4th Cir. 2003). Here, short of Palladium's suspicion

12

that Trion's contest and advertisements have been accessed by Michigan residents, there is little reason to conclude that the pending request is reasonably calculated to lead to the discovery of admissible evidence. *See generally, Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970). Moreover, as Palladium acknowledges, it proposes no manageable timetable under which it could complete discovery before the impending Los Angeles trade show on June 15th (which is the very situs where Palladium has argued that it will suffer irreparable harm).[5] For all of these reasons, Palladium's request for expedited discovery must be denied.

### IV.

For the reasons stated above, the Court grants Trion's motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. In addition, the Court denies Palladium's request for expedited discovery. Finally, Palladium's motion for a preliminary injunction is denied for lack of personal jurisdiction.

IT IS SO ORDERED.


Date: June 11, 2010S/Julian Abele Cook, Jr.
Detroit, MichiganJULIAN ABELE COOK, JR.
United States District Court Judge

---

[5]The Plaintiff, through a supplemental pleading filed June 9, 2010, requests limited discovery through July 20, 2010. However, as noted above, the Court is not convinced that the current request, under any time frame, is reasonably calculated to lead to the discovery of admissible evidence.